## COMPETENCY OF A HUSBAND'S TESTIMONY AGAINST HIS WIFE CHARGED WITH MURDER.

Common Pleas Court of Clark County.

THE STATE OF OHIO V. BIRDIE STROME.

Decided January 21, 1926.

*Evidence—Husband's Testimony Competent against Wife Charged with Murder of Child by Poisoning—Evidence as to Former Crimes Committed by Defendant—Efforts to Escape Prosecution Similar, whether by Flight or by Statements Calculated to Allay Suspicion—Expert Testimony as to Poison—Question of Autopsy—Section 13659.*

1. A husband is a competent witness against his wife, charged with murdering his child by means of poison, the wife being the step-mother, on the grounds that it constitutes cruelty to "their child," and is within the exception of General Code, Section 13659.

2. Statements made by an accused person to allay suspicion may be proven to be untrue by evidence in chief, not for the purpose of impeachment, but as one of the circumstances reflecting upon guilt; and such evidence is not rendered incompetent because it also tends to prove the commission of another crime.

3. It is within the discretion of the court to order the exhumation of the body of a person alleged to have been killed by means of poison, for the purposes of examination, but it will not be ordered where an examination has been made before burial, and a second examination is not shown to be necessary to subserve justice.

*O. L. McKinney* and *W. F. Bevitt,* for the state.

*James B. Malone* and *L. E. Laybourne,* for the defendant.

KRAPP, J.

The defendant has filed a motion for the exhumation of the body of Esta Strome, and requested that the court appoint an expert pathologist and expert toxicologist to make examinations of the body and viscera and report their findings to the court.

The defendant has also filed a motion for a new trial setting forth numerous grounds, but at this time only a few are strongly urged. The two motions are necessarily related and involve the discussion of the same questions

to a certain extent, and will therefore be considered together.

First taking up the motion for a new trial, it is claimed that there was error in the admission of the testimony of the husband of the defendant. Under the common law it is quite true that he would not be competent to be a witness. His competency depends on the interpretation to be placed upon the enabling statute. This statute provides that the husband or wife may testify against the other in a criminal case where the charge involves cruelty to their children. While the charge in this case is murder, yet it involves cruelty, and it therefore constitues a case coming within the staute.

But it is urged that the statute using the words, "their children," and being a statute in derogation of common law, can not be extended beyond the strict terms of the words of the statute, and that Esta Strome not being the child of both Birdie Strome and Carey Strome, would be an exception, and the rule would therefore not apply.

The court interprets this statute differently. Unless a contrary rule is required in the interpretation of statutes, words indicating the plural may be applied in the singular sense, and the term "their child or children" is the same as if it said "his or her child or children."

In addition to that, words are to be given their ordinary meaning, and the child in this case would ordinarily be called the child of the defendant and her husband, even though the defendant was the step-mother.

The court is of the opinion there was no error in the admission of the testimony of Carey Strome at the trial.

The court admitted this testimony on the further ground that the state stated it expected to prove that Carey Strome was not the lawful husband of the defendant. There was some evidence in support of the marriage of the defendant with Baltzell, but irrespective of whether or not such prior marriage was proven, the testimony was competent.

The second point upon which counsel rely is their claim that the court erred in admitting testimony which tended to show the defendant was guilty of a former crime in connection with the death of George Frock.

The rule is well settled that upon the trial of a defendant on a specific charge, evidence of other crimes committed, is not admissible. There are ample reasons for supporting this rule as a matter of law. One who is put upon his defense should know the charge he is required to meet, and should not be required to defend against other charges which might be brought against him, and upon which he has no opportunity of preparing a defense. The theory of the law is that one crime does not prove another, nor tend to prove another, unless there is a relation between them, but this rule of law, like so many others, has its exceptions.

As was stated by the court in the famous case of *State v. Hyde*, Supreme Court of Missouri, Vol. 234, p. 200,—the 4th paragraph of the syllabus being as follows:

"But the rule is subject to the qualification and exception, that in making proof against a defendant it is competent for the prosecution to put in evidence all relative facts and circumstances which tend to establish any of the constitutive elements of the crime of which he is charged, even if such facts and circumstances tend to prove him guilty of other crimes."

There are other special exceptions to the rule involving the elements of motive, intent, absence of mistake, a common scheme or plan, and identity. These special exceptions need not be considered, as they do not apply in the instant case.

In the equally, or perhaps, more famous case of *State of New York* v. *Molineaux*, 168 N. Y. Reports, 264, the subject was exhaustively dealt with, both in the decision of the court, and in the dissenting opinion of the Chief Justice, and others.

A new trial was granted in that case on the ground of the error of the lower court in admitting in evidence testimony of another crime with which the defendant was charged. The majority of the court based its decision partly on this ground, because the other crime charged was interpreted by them as being not related to the crime for which Molineaux was being tried. Upon this question the court divided, and the dissenting opinions are almost

of equal value with the majority opinion, for the purposes of this case. Quoting from Chief Justice Parker's opinion, we find the following.

"I think the real test in such case is, does the evidence of the other crime fairly aid in establishing the commission by the defendant of the crime for which he is being tried? And that test, and none other, is fairly established by the authorities."

And again:

"So, if a defendant claims that the killing was due to mistake or accident, the facts of another crime may be proved by the state if those facts tend to show that there was neither mistake nor accident on the part of the defendant."

The Chief Justice then quotes from a decision of the Supreme Court of New York, as follows:

"It is an elementary principle of law that the commission of one crime is not admissible in evidence upon the trial for another, where its sole purpose is to show that the defendant has been guilty of other crimes, and would consequently, be more liable to commit the offense charged. But if the evidence is material and relevant to the issue, it is not admissible because it tends to establish the defendant's guilt of a crime other than the one charged."

The court is satisfied that the above quotation correctly states the law.

It then remains to be considered whether or not the evidence in this case with regard to George Frock, comes within such an exception. It will be recalled that the state offered evidence in chief to the effect that the defendant had made a statement that she did not know whether strychnine was a powder, tablet, or liquid.

The evidence with respect to the death of George Frock was admitted solely for the purpose of showing that this statement was false, and that she did know what strychnine was, and not for the purpose of showing that she had been the author of George Frock's death. If the evidence was competent for the purpose of contradicting her statement, it was not made incompetent because it also tended to prove her guilty of another crime.

It has been urged that this should have been matter

of rebuttal, if competent at all. Her statement as to lack of knowledge of the character of strychnine was not rebutted for the purpose of impeaching her veracity, but because it was one of the important circumstances in the case bearing upon her guilt or innocence.

It is well settled that one who attempts to escape or flee, and is later charged with the commission of a crime, that attempt to escape may be proven in chief, as one of the circumstances to be taken into consideration by the jury, as reflecting upon guilt.

There is no reason why the rule should be limited to an attempt to run away by taking one's self out of the reach of the law, physically. All efforts made by one who is charged with a crime, to avoid arrest by making statements calculated to allay suspicion, come within the same classification, at least in principle. The court is of the opinion there was no error in the admission of this testimony.

The next ground of error urged is that the hypothetical question propounded by the state to the expert witnesses, should have been in the abstract form and not the concrete, and that the inclusion of the name of Esta Strome applied the question to the very facts of the case on trial, instead of to a general state of facts, and that the answer of the expert in expressing an opinion, was the answer which it was exclusively the province of the jury to determine.

The court does not agree with this contention. An expert witness may express an opinion, if the facts upon which he expresses his opinion are substantially those shown by all the evidence; it is not the substitution of his opinion for that of the jury. The jury have the right to consider his opinion, with all the other evidence, and then form their own conclusions. There was no error involved in the hypothetical question.

Counsel also claims there was error in the charge of the court, especially with reference to that portion which dealt with the definition of reasonable doubt. There can be no question but that the court dealt very exhaustively, and perhaps too much so, in defining this term. To the mind

of the lawyer the words, reasonable doubt, as used in law, are so simple that they need little or no explanation. To the mind of the layman there are so many conceptions of the meaning of the term, that the court is required to give it some definition. The charge in this case upon that point was perhaps, too long, but it certainly was not misleading, and would give a clear idea of the legal meaning of the phrase,—reasonable doubt,—to every juror, without regard to what their previous thought was on that point. There can be no error involved in a charge that makes the point so clear as to be beyond the possibility of mistake by the jury.

It is also urged that the verdict is not sustained by sufficient evidence. During the trial and now, counsel for defendant relied greatly upon the testimony of their chief expert witness, and especially on the point that there were 8-10 of a grain of gelsemium in the three tablets which had been administered to Esta Strome; that the alkaloid found in the stomach was gelsemium and not strychnine, and that the autopsy was not sufficiently complete to show whether there may not have been a pathological cause of death.

Dealing with these points: First, we will consider the testimony of the expert witness. The hypothetical question propounded by the state was also propounded to him. He gave an evasive answer to the question. The question was in such form that it inevitably called for but one answer, and that is admitted by counsel for defendant. It is true that after an intermission the witness returned to the stand, and at the instance of counsel for defendant, he did answer the question. This clearly showed his attitude of mind to be that, not of an impartial expert, but of one who was biased, intending only to help one side and to answer nothing that might help the other, thereby affecting the weight of his testimony and his credibility with the jury.

But more important that that, his testimony with regard to gelsemium, the pure drug contained in the three tablets, was so mis-leading as to have even misled counsel

for defendant, and they based practically their entire case upon this misleading testimony. It was assumed in argument to the jury, by counsel for defendant, that their witness testified there was 8-10 of a grain of the pure drug of gelsemium in the three tablets. He never gave such testimony. He used the terms gelsemium, tincture of gelsemium and gelsemia. Just what he meant by the last word the court does not know, but he certainly did not mean the pure drug gelsemium, because he must have known if he had made any examination of the tablets at all, that they did not contain 8-10 of a grain of gelsemium.

At the time this testimony was given, the court was quite convinced that there was an error, and is still so convinced. The tablets themselves, and the formula which was given showing that one of a great many ingredients was a tincture of gelsemium, 10 per cent., made it almost a mathematical impossiblity that there should have been 8-10 of a grain of the pure durg in the three tablets.

Taking into consideration the amount of chemical recovered by Dr. Smith, the amount which must have been used by Dr. Reuter in his experiments, and a further amount which was eliminated prior to death, we must conclude that the total amount originally ingested was in excess of 5-10 of a grain. In order to secure that amount of gelsemium, there must have been ten times as much in the form of tincture of gelsemium, which would be five grains.

The removal of the sugar coating on the tablets and the allowance of an appreciable amount of the other six ingredients in the medicated portion of the tablet, would reduce the weight of the three tablets below five grains, which forces the conclusion that the chemical recovered from the stomach could not have been gelsemium.

If the court's conclusion is correct on this point, then the principal ground of defense relied upon by counsel for defendant, is entirely swept away.

But assuming that the court is in error on this point, and that there was 8-10 of a grain of gelsemium in the three tablets, the testimony of Dr. Smith of Ohio State

University clearly shows that in his purification of the contents of the stomach, chemical means were adopted which not only removed all foreign substances and acids, but also all other alkaloids, with the exception of strychnine, and that as the result of his experiments, the residue was, in fact, strychnine, which was demonstrated by the biological and chemical tests, as well as by taste, and also by the formation of crystals, which were observed by Dr. Smith.

Viewing all the evidence, the court is satisfied there can be no question but that the residue of the contents of the stomach, produced by Dr. Smith, was strychnine. The tests made by Dr. Howard were with the pure drug of gelsemium from his own labratory, and not from the infinitesimal part that might have been extracted from the tablets which contained the tincture of glesemium.

It is contended that the autopsy made by Dr. Rueter was very incomplete, and that a more complete autopsy might have shown a pathological cause of death. It must be remembered that this autopsy was performed under difficult circumstances, and seems to have been reasonably thorough.

It is suggested that some further organs might have been examined, and I presume if these other organs had been examined, no matter how complete the autopsy was, the suggestion might still be made that something additional should have been done, until the body had been so thoroughly mutilated as to go beyond the bounds of decent respect for the dead, and the feelings of the family.

Dr. Reuter gave his testimony in a straight-forward manner, detailing in full the things which he had done in making the autopsy.

The court sees no reason to discredit, in any way, what Dr. Reuter did, in the light of all the circumstances. It must be remembed that the symptoms displayed by Esta Strome had been described to Dr. Reuter, and there was no occasion for carrying the autopsy into those parts of the body, or into other organs, when such investigation could not have revealed anything which would have pro-

duced these symptoms. The only testimony in the case was that the convulsions were tetanic in character, and with these in mind, a search could only have been made for tetanus. But even such a search might be considered as unnecessary because other symptoms, such as clearness of mind would be wholly absent in tetanus, and would be present in a case of strychnine poisoning.

The court is of the opinion that the evidence establishes that the death of Esta Strome was due to strychnine poisoning, and that there was ample evidence for the jury to find the defendant guilty.

The motion for a new trial will therefore be overruled.

The court having expressed his views at length on the question of autopsy, and the probability of ther being any pathological cause of death not revealed by the autopsy, need not discuss these matters again in passing upon the motion for an exhumation of the body. It is sufficient to say that the court feels that the autopsy made by Dr. Reuter was all that was necessary. It is possible there might still be in the kidneys and other organs a small amount of strychnine of gelsemium, but there is nothing to inform the court as to whether this amount has any liklihood of being in such quantity as to be capable of segregation. Without pretending any knowledge of chemistry the court ventures the opinion that the amount which could be recovered in such a case, from the viscera which remains, would be so small as scarely to be demonstrable, and with a strong probability of none whatever being found.

With these views which the court entertains, it would be an empty gesture to order the exhumation of the body, and would throw no additional light whatever upon the cause of the death of Esta Strome.

This motion is directed to the discretion of the court, and in a proper case could be granted by the court to subserve the ends of justice. The court does not think the present case is such a one, and the motion for an order for a pathological and toxicologist expert to examine the body, and report their findings, will be overruled.