[Crim. No. 1233.    Second Appellate District, Division One.—March
18, 1926.]

THE PEOPLE, Respondent, v. MATTHEW DECKERT,
Appellant.

[1] CRIMINAL LAW — MURDER — EVIDENCE — REFRESHING MEMORY —
SHORTHAND NOTES.—While, as a general rule, notes or memoranda
by a witness are not admissible on direct examination, a phono-
graphic reporter may refresh his memory from his shorthand notes
and therefrom give testimony as to statements made by witnesses
in former trials; and a shorthand reporter may read his notes by
questions and answers.

[2] ID.—STATEMENT OF DEFENDANT—TRANSCRIBED SHORTHAND NOTES—
READING TO JURY.—In this prosecution for murder, a witness for
the prosecution having testified preliminarily that the statement
made by defendant the next day after the crime was committed
was taken by a stenographer at the request of the witness, that
the stenographic notes were written up within a few hours there-
after, that the witness immediately read such transcription and
knew that it was correct, and that, in order to refresh his
memory, it would be necessary for him to read such transcribed
notes; the trial court did not err in permitting the witness, over
the objection of defendant, to read defendant's statement to the
jury.

[3] ID.—READING NOTES TO JURY—ERROR WITHOUT PREJUDICE.—In
such prosecution, even though the ruling of the court permitting
said witness to read into evidence the transcribed notes made

---

1. See 27 Cal. Jur. 88, 91.

by a shorthand reporter was open to question, defendant was not
harmed thereby, where at a later hour on the same day such
statement was made, as shown by uncontradicted evidence in the
case, defendant repeated the statement in substance to other
persons.

[4] ID.—IMPEACHMENT OF OWN WITNESSES—FORMER STATEMENTS.—In
this prosecution for murder, where certain witnesses produced on
behalf of the people, and upon whose testimony the prosecution
relied to rebut material testimony given by defendant, failed to
testify in accordance with their respective former statements made
to the district attorney, and by such failure in a measure corrobo-
rated the evidence offered by defendant, the trial court did not
err in permitting the district attorney, for the purpose of
refreshing the memories of such witnesses as well as to impeach
them, to read to the jury certain statements theretofore made by
each of such witnesses respectively.

[5] ID.—FAILURE TO TESTIFY AS EXPECTED—IMPEACHMENT.—Where a
witness called by a party has simply failed to testify to all that
party expects or desires, but has not given testimony against
him, it is not permissible for the party calling him to prove
that such witness had previously made statements which, if sworn
to at the trial, would tend to make out his case.

[6] ID.—FORMER STATEMENT—REFRESHING MEMORY—LEADING QUES-
TIONS.—In this prosecution for murder, a witness for the people
on direct examination having been asked to relate a certain con-
versation with defendant and for the purpose of refreshing his
memory having been permitted to read to himself, but not to the
jury, a transcription of the statement which he had formerly
made to the district attorney, and he then having testified that
he did not know what the conversation was, it was not improper
for the district attorney to ask the witness leading questions as
to whether defendant had stated that he desired to stay with the
witness that night and as to whether or not defendant said
whether or not he was tired; but even though the court erred
in permitting such examination, it was not sufficiently material to
result in a miscarriage of justice.

[7] ID.—EXPERIMENTAL EVIDENCE—APPEAL—WAIVER OF SPECIFICATION
OF ERROR.—On appeal from the judgment of conviction of murder,
where appellant specifies error on the part of the trial court in
permitting a witness to testify over his objection to time and
distance it took him to travel over the route taken by appellant,
according to the latter's statement to the district attorney, but
neither argument nor authority is presented by appellant, other
than the mere statement that such evidence "was an attempt to

4.   See 27 Cal. Jur. 86.
5.   See 27 Cal. Jur. 173; 28 R. C. L. 646.

prove an experiment, and was incompetent, irrelevant and immaterial," the appellate court will assume that appellant has abandoned the point.

---

(1) 16 C. J., p. 759, n. 72; 40 Cyc., p. 2453, n. 1, 3, p. 2454, n. 4, 6, p. 2457, n. 41 New, p. 2467, n. 83. (2) 40 Cyc., p. 2452, n. 98. (3) 17 C. J., p. 321, n. 47. (4) 17 C. J., p. 307, n. 44; 40 Cyc., p. 2694, n. 10, p. 2703, n. 43. (5) 40 Cyc., p. 2702, n. 41. (6) 17 C. J., p. 368, n. 5; 40 Cyc., p. 2449, n. 79. (7) 17 C. J., p. 212, n. 18, p. 213, n. 27.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. Chas. S. Crail, Judge. Affirmed.

The facts are stated in the opinion of the court.

Henry C. Huntington for Appellant.

U. S. Webb, Attorney-General, and John L. Flynn, Deputy Attorney-General, for Respondent.

HOUSER, J.—Defendant was convicted of the crime of murder and sentenced to life imprisonment. He appeals from the judgment and from an order denying his motion for a new trial.

Because of the fact that no claim is made by appellant that the evidence was insufficient to support the verdict, it becomes unnecessary to make a statement of what was shown by the evidence produced by the prosecution other than so much thereof as may be pertinent to illustrate such points as are raised by appellant as grounds for a reversal of the judgment.

Appellant's first specification of prejudicial error alleged by him to have been committed by the trial court is that, over the objection of defendant, the district attorney was permitted to refresh the memory of a certain witness introduced by the prosecution as to conversation had in his presence with defendant, by reading into the record from a transcript of stenographic notes which were taken by a stenographer who was present at the time such statements were made.

Section 2047 of the Code of Civil Procedure provides that a witness may be "allowed to refresh his memory respect-

ing a fact, by anything written by himself, or under his direction, at the time when the fact occurred, or immediately thereafter, or at any other time when the fact was fresh in his memory, and he knew that the same was correctly stated in the writing, . . . ''

It appears that on the morning following the day on which the crime was committed defendant made a statement covering some thirty-five or forty pages of the record on appeal, which statement was elicited by means of questions which were propounded to him by two police officers and a deputy district attorney, and which questions and the answers thereto were ''taken down in shorthand'' and within a few hours thereafter transcribed on a typewriter.

The witness who gave testimony with reference to such statement by defendant, in response to the question as to whether the statement was taken under the direction of the witness, testified that it was done at his request; that on the same day and ''after the statement was taken down in shorthand and written in typewriting'' he had read it and found that it was ''a true transcription of the statement that was given''; and that at the time he gave his testimony, in order to refresh his memory as to what the defendant had said, it would be necessary for the witness to read such statement. The witness then proceeded to read the statement to the jury—the situation, as expressed by the court, being that ''the witness is reading from this statement his recollection of what occurred.''

[1] While as a general rule notes or memoranda made by a witness are not admissible on direct examination, it would seem to be well established that a phonographic reporter may refresh his memory from his shorthand notes and therefrom give testimony as to statements made by witnesses in former trials. (*People* v. *Ammerman,* 118 Cal. 23 [50 Pac. 15] ; *People* v. *Sexton,* 132 Cal. 37 [64 Pac. 107] ; *People* v. *Vogel,* 36 Cal. App. 216 [171 Pac. 978] ; *Benton* v. *Benton,* 131 Cal. 472 [63 Pac. 775].)

And it has been held that the shorthand reporter may read his notes by questions and answers. In the case of *Watrous* v. *Cunningham,* 71 Cal. 30 [11 Pac. 811], error was predicated upon the fact that the stenographic reporter was permitted to read by question and answer the testimony of a witness taken in a former trial of the cause. In ruling

that no error was thus committed, the court said: "That was not allowing the testimony of Campbell in shorthand to be read as a deposition, but was permitting Hood, who could recollect the testimony given on a former trial of the same cause, to state from such recollection, refreshed by the reading of his shorthand notes, what Campbell (who at the time of the present trial was without the jurisdiction of the court) had formerly sworn to in the reporter's hearing. And such action of the court was proper."

In *Burbank* v. *Dennis,* 101 Cal. 90, 104 [35 Pac. 444], where a similar situation was presented, the court used the following language: "But the question here presented is whether the reporter, not having a definite and well-defined recollection of the statements so made after he had refreshed his recollection as far as possible from the writing, will be allowed to read the contents of the memoranda to the court. There appears to be some difference of opinion among courts and law-writers as to the proper practice at common law. But under our statute (Code Civ. Proc., sec. 2047) the course here adopted is expressly allowed. In the case of *People* v. *Lem You,* 97 Cal. 224 [32 Pac. 11], the practice was approved as justified by the foregoing provision of the code. And in the case of *People* v. *Gardner,* 98 Cal. 127 [32 Pac. 880], the identical question was presented, and this court said: 'The remaining objection to the admission of the evidence of the witness, Briar, does not seem to be well founded, in view of the last provision of section 2047 of the Code of Civil Procedure.' Appellant's contention that the reporter's original notes are the basis from which he should have been required to refresh his recollection will not be considered, as such objection was not brought to the attention of the trial court. However, we do not intimate there is any merit in the point."

In the case of *People* v. *Lem You,* 97 Cal. 224 [32 Pac. 11], it was expressly held that it was proper to permit a phonographic reporter to read testimony to the jury from his shorthand notes.

In the case of *People* v. *Sexton,* 132 Cal. 37 [64 Pac. 107], the instant point was considered, and it was said: "The stenographer had the right to read from her notes of his evidence taken at the time, if she was so inclined. The

statute contemplates that she may thus refresh her recol-, lection.''

It would thus appear to be settled that, at least so far as a shortland reporter is concerned, in appropriate circumstances, no valid objection can be raised to the reading by him to the jury of his phonographic notes of testimony of witnesses taken on a former trial of the cause. The situation here presented goes but one step further. The statute (sec. 2047, Code Civ. Proc.) under which the basic authority is found for permitting a shorthand reporter to read his stenographic notes to the jury provides in substance that a witness may refresh his memory by anything written by himself, *or under his direction,* etc. The witness who read the transcription of the stenographic notes here under consideration testified preliminarily that the statement made by the defendant was taken by the stenographer at the request of the witness; that the stenographic notes were typewritten within a few hours after they were made; that the witness immediately read such transcription and knew that it was correct, and that on the trial of the action, in order to refresh his memory, it would be necessary for the witness to read from such transcribed notes. The witness, therefore, occupied a position similar in all respects to that which would have been presented had the shorthand reporter read from the transcript—the only difference being that the shorthand reporter would have been the person who made the stenographic notes; and that condition is covered by the circumstance, as provided by the statute, in that the writing was prepared under the direction or request of the witness.

In the case of *People* v. *Brown,* 3 Cal. App. 178 [84 Pac. 670], it was held: ''There was no error in permitting a witness to refresh his memory from a memorandum written under his direction at a time when the facts were fresh in his memory and he knew that the same were correctly stated in the writing.''

In *Estate of Moore,* 180 Cal. 570, 584 [182 Pac. 285], a witness was shown a transcript of a bill of exceptions setting forth what purported to be the testimony theretofore given by another person in another trial. The witness (Mr. Olney) testified that he recognized the bill of exceptions as containing a correct statement of what transpired in court

at the time stated in the document; and that the witness had himself prepared the bill of exceptions while its contents were fresh in his memory, *"using the court reporter's notes to check it."* In the course of the opinion, among other things, the court said: "The court refused to allow the witness, testifying from the document, to state what Mr. Moore testified to while on the witness-stand on the occasion indicated and also denied the offer of defendant to put parts of the transcript in evidence to show the date and nature of the proceedings and Mr. Moore's testimony. Mr. Olney's testimony was clearly admissible. (Code Civ. Proc., sec. 2047.) Respondents' counsel concede that perhaps the reporter who made and transcribed the notes of Mr. Moore's testimony would be permitted to read from his transcript, but deny that anyone else might do so. They also call attention to the fact that the transcript did not purport to contain all the testimony of the witness. Both contentions are without force."

[2] In reason and in the light of the authorities heretofore cited herein, the contention of counsel that error was committed by the trial court in thus permitting defendant's statement to be read to the jury (in connection with and as a part of the testimony of the witness) cannot be sustained. [3] But even though the practice of permitting a witness, circumstanced as was the witness as to whose testimony complaint is here made, to read into evidence the transcribed notes made by a shorthand reporter, might be open to question, it further appears in evidence in the instant case, without contradiction, that at a later hour on the same day the defendant repeated the statement in substance to other persons. It is therefore apparent that in any event defendant was in nowise harmed by the reading of defendant's first statement by the witness to whom reference has been had.

[4] It is next urged by appellant that the trial court erred in permitting the prosecution, over the objection of defendant, to cross-examine and to impeach certain witnesses called on behalf of the prosecution, and (for the purpose of refreshing the memories of such witnesses as well as to impeach them), to read to the jury certain statements theretofore made by each of such witnesses respectively.

Considering the point as to the testimony given by each of the several witnesses, it may be noted that as to the first witness he had testified that at a time approximately ten days before the murder occurred a certain "gun" belonging to defendant was either loaded or that cartridges for it were produced at that time. Whereupon the deputy district attorney in charge of the prosecution directed the attention of the witness to the fact that on a former occasion he had stated that the "gun" "was loaded, all but one chamber." Thereupon the witness stated that: "A. My best recollection is that there were loads for the revolver. They were probably in the chambers, but I would not want to say with certainty at this time, because by memory is not entirely clear."

As to the second and third witnesses, each of whom was similarly impeached, it appears that he had testified to having seen defendant at a given place at a certain named hour; whereas in the statement theretofore made by the witness to the district attorney he had placed the occurrence as having happened at a different hour.

Regarding the testimony of the fourth witness, it appears that in narrating an alleged telephonic conversation had between him and defendant, the witness stated that in the course of such conversation defendant had inquired, "Anyone there?" and that he had replied, "Yes, the cops." The former statement made by the witness was that defendant had asked, "Is there anyone else there?" to which question the witness had replied, "Yes, the cops."

The difference between the testimony given by the fifth witness and the statement which theretofore he had made to the district attorney consisted in that in regard to the manner of defendant shortly after the time when the murder was committed, the witness testified that "his manner was ordinarily as it always was at that time"; while in the statement made to the district attorney the witness had stated, "Well, he appeared slightly nervous."

On a separate occasion, the same witness had testified that he did not recall a certain conversation between him and defendant; whereupon the deputy district attorney, after inquiring of him if he had not just refreshed his recollection, asked whether defendant had said anything to the witness "about wanting to stay there all night," and "whether

or not he was tired," to which questions the witness replied that, "Oh, yes. He said he was going to stay there, wanted to stay there that night; . . . he said he was tired; he had done a lot of walking or had a long walk."

Section 2049 of the Code of Civil Procedure provides that "the party producing a witness . . . may contradict him by other evidence, and may also show that he has made at other times statements inconsistent with his present testimony, . . . "

In the case of *Zipperlen v. Southern Pac. Co.,* 7 Cal. App. 206, 216 [93 Pac. 1049], the rule is laid down that, in order to thus impeach one's own witness, it must appear that the witness has given testimony damaging to the party producing him, and that such party "has been misled and taken by surprise, and that he had reason to believe that the witness would give testimony favorable to his side." (See, also, *Rystinki* v. *California Traction Co.,* 175 Cal. 336 [165 Pac. 952]; *People* v. *Mallicoat,* 27 Cal. App. 355 [149 Pac. 1000].)

As reflecting upon the testimony given by each of the several witnesses to which attention has been directed it will at once appear that, because of the fact that in each instance the witness admitted having made the former statement to the district attorney, that official was justified in believing that on the trial of the action the witness would testify to the same effect as he had formerly declared to the district attorney were the facts within his knowledge, and, consequently, that the failure of the witness to so testify had both misled and surprised the district attorney. In such circumstances the right of the prosecution to impeach the testimony of the witness is fully sustained by the cases of *People* v. *Ross,* 115 Cal. 233 [46 Pac. 1059], and *People* v. *Bushton,* 80 Cal. 160 [22 Pac. 127]. The propriety of the procedure adopted by the district attorney in the instant case is illustrated in the case of *People* v. *Durrant,* 116 Cal. 179, 214 [48 Pac. 75], where it is said: "When a witness called by a party fails to testify to matters previously within his recollection, or gives evidence in apparent variance with that formerly given, it is not incumbent upon the party producing the witness to wait for the assaults of the cross-examination to expose seeming inconsistencies or discrepancies. While he may not impeach his witness (saving

under certain exceptional circumstances), he may with propriety refresh his recollection, to the end that the witness and his present evidence may both be put fairly in their proper light before the jury.''

Considering, then, the point as to whether the several witnesses had given testimony which was damaging to the prosecution: In the statement made by defendant he had denied that he owned a "gun," or that he had any cartridges. The damage to the prosecution resulting from the difference in the testimony of the witness and his former statement regarding the ownership of a "gun" by defendant, and as to whether it was loaded, would be that if the witness had testified in accordance with the statement made by him to the district attorney, as a matter of fact defendant would have been shown to have been the owner of a "gun" within a short time next preceding the date when the murder was committed. In addition thereto, it would thus appear that defendant had made false statements with reference to the ownership by him of a weapon capable of producing the injury which resulted in the death of the person who was murdered, and by reason thereof the credibility to be attached to the testimony given by defendant would be seriously affected.

The defense relied upon by defendant consisted of an alibi. It was of importance to such defense that his presence at a given place and at a certain fixed time of day be established. In order that evidence of that nature might be successfully rebutted, the prosecution relied upon the testimony of certain witnesses, including those whose testimony was sought to be impeached, by showing a state of facts differing from the evidence given by defendant with relation to his alibi. If such witnesses produced by the prosecution failed to testify in accordance with their respective former statements made by them to the district attorney, and by such failure in a measure corroborated the evidence offered by defendant, the damage to the prosecution would be apparent. It was therefore advisable, if not necessary, that the attention of the witnesses be called to the discrepancy existing in their several statements, to the end that their memories might possibly be refreshed and, failing therein, that the position assumed by the district attor-

ney in introducing such witnesses might be placed in a proper light before the jury.

Regarding the fourth witness for the prosecution whose testimony was sought to be impeached, there is no material difference between the statement which the witness made to the district attorney and the testimony given by the witness on the trial of the action. It is clear that no harm could have resulted to defendant by reason of the attempted impeachment of the witness.

The matter to which the attention of the fifth witness for the prosecution was directed related to the manner of the witness shortly after the murder had occurred. If, as the witness had stated to the district attorney, defendant "appeared slightly nervous" at the time in question, such nervousness might be taken as an indication of a guilty conscience. On the other hand, if, as the witness testified, "his manner was ordinarily as it always was at that time," a clear conscience on the part of defendant might be indicated. The resultant damage to the prosecution by reason of the alteration in the declaration of the witness becomes at once apparent.

[5] As to the specification of error resulting from impeachment of the same witness because of his lack of memory of the facts to which his attention was directed, it is unquestionable that the law as expressed in the authorities sustain appellant's position that "where a witness called by a party has simply failed to testify to all that party expected or desired, but has not given testimony against him, it is not permissible for the party calling him to prove that such witness had previously made statements which, if sworn to at the trial, would tend to make out his case." (*People* v. *Creeks,* 141 Cal. 529, 531 [75 Pac. 101]. See, also, *Estate of DeLaveaga,* 165 Cal. 607, 631 [133 Pac. 307].) The circumstances surrounding the matter to which appellant refers, however, were not such as to indicate that the rule announced in *People* v. *Creeks, supra,* is applicable. [6] The transcript of the court reporter's notes taken on the trial of the case shows that on the direct examination of the witness he was asked to relate a conversation had between him and defendant and for the purpose of refreshing the memory of the witness he was permitted to read to himself, and not to the jury, a transcription of the statement

which he had formerly made to the district attorney, after which the following questions and answers appear in the record: "Q. What was the conversation? A. I don't know what the conversation was now. Q. Well, didn't you just refresh your recollection? A. Yes, but I don't understand that. I can't— Q. Well, did Mr. Deckert say to you anything about wanting to stay there all night? A. Oh, yes. He said he was going to stay there, wanted to stay there that night. Q. Did he say anything to you about whether or not he was tired? A. Yes, he said he was tired, he done a lot of walking or had a long walk."

It thus appears that after the witness had properly refreshed his recollection, and likewise had had his attention called to a particular part of the conversation, he made the statement to which the criticism of appellant is directed. No attempt on the part of the district attorney was made to prove that the witness had "previously made statements which, if sworn to at the trial, would tend to make out his case." (*People* v. *Creeks,* 141 Cal. 529, 531 [75 Pac. 101].) There was nothing improper in the course pursued by the district attorney in eliciting from the witness the statement here under consideration. Moreover, we are not prepared to reach the conclusion that a miscarriage of justice resulted, even though it might be assumed that the jury could not properly receive evidence that defendant wished to "stay there (with the witness) that night," and that defendant said "he was tired; he had done a lot of walking or had a long walk." Direct evidence was received that up to the time of his arrest defendant did remain with the witness on that night. That feature of the evidence having been otherwise admitted without objection, any question of it introduction on the occasion referred to in appellant's specifications becomes immaterial. With reference to the testimony that defendant said "he was tired; he had done a lot of walking or had a long walk," while it may have had a bearing upon the question of defendant's guilt, it was not of so great importance as that its omission from the evidence could have produced any change in the verdict, and consequently did not result in a miscarriage of justice. In accordance, therefore, with the constitutional provision (sec. $4\frac{1}{2}$, art. VI) affecting errors of the nature of that here presented, the

judgment cannot be set aside, nor a new trial granted because of such assumed error.

[7] Appellant's final assault upon the judgment herein consists in a specification of error on the part of the trial court in permitting a witness "to testify over defendant's objection to time and distance it took him to travel over the route taken by defendant, according to the defendant's statement to the district attorney." In support of his contention, neither argument nor authority is presented by appellant, other than the mere statement that such evidence "was an attempt to prove an experiment, and was incompetent, irrelevant and immaterial"—in view of which it must be assumed that appellant has abandoned the point.

No prejudicial error appearing in the record, it is ordered that the judgment and the order denying defendant's motion for a new trial be and the same are affirmed.

Conrey, P. J., and York, J., concurred.