211 P.2d 821

**STATE v. LANE.**

No. 997.

Supreme Court of Arizona.

Nov. 15, 1949.

Lenkowitz & Wein, of Phoenix, Charles C. Stidham, of Phoenix, for appellant.

Fred O. Wilson, Atty. Gen., Charles Rogers, Asst. Atty. Gen., Maurice Barth, Asst. Atty. Gen., for appellee.

PHELPS, Justice.

Appellant Charles E. Lane, Jr., hereinafter referred to as defendant was charged by an information filed in the Maricopa County Superior Court with the murder of one Mary Alice Lane, in said county and state on or about February 10, 1948, to which defendant entered a plea of not guilty. The cause regularly came on for trial and at the close thereof a verdict of murder of the first degree was returned by the jury fixing the punishment at life imprisonment in the state penitentiary at Florence.

Thereafter upon the denial of a motion for a new trial and motion in arrest of judgment the court pronounced its judgment and sentence in conformity with the verdict of the jury.

From said judgment and orders denying defendant's said motions, defendant has appealed to this court.

We do not deem a statement of facts necessary except as they may be developed in discussing the points raised on appeal.

Defendant has presented six assignments of error which may be logically grouped into two divisions raising two primary questions of law for our consideration.

Assignments 1 and 2 are directed to what defendant terms a fatally defective information and the court's action in permitting the county attorney to amend said information after the jury had been impaneled and sworn to try the case. Assignments 3, 4, 5 and 6 challenge the admissibility of the testimony of the father of defendant offered by the state in rebuttal and the alleged error of the court in permitting the state to cross-examine and to impeach said witness.

It appears that after the jury had been impaneled and sworn when the clerk

was reading the information in the case, it was discovered for the first time that the information had not been signed by the county attorney and the court upon the request of the state permitted the county attorney to sign said information. The defendant vigorously objected to such amendment and moved for a mistrial upon the ground that the information did not conform or comply with the laws of the state of Arizona as set forth in section 44-233 of the Code, presumably meaning section 44-705, and that in fact it was no information at all because it was not signed. This motion was promptly denied by the court.

The defendant contends that the court was without power to permit said amendment and that in allowing the amendment to be made the constitutional rights of the defendant were violated and that the court must presume that the defendant was prejudiced thereby. Defendant relies upon sections 24 and 30, article 2 of the constitution of Arizona which provide in substance that no person shall be prosecuted in any court of record for a felony or misdemeanor otherwise than by information or indictment and that defendant has a right to have a copy thereof. He contends that an unsigned information is a mere scrap of paper and could not be given vitality by amendment at that stage of the proceedings. It is the further contention of the defendant that subsection (2) of section 44-705, A.C.A. 1939, upon which the court

relied as authority for its action, violates the above constitutional provisions and that said section is therefore void. Section 44-705, supra, provides:

"Subscription and verification of information.—(1) All informations shall be subscribed by the county attorney. Except in cases where the defendant has been held to answer in a preliminary examination, the information shall be verified by the oath of the county attorney or that of the complainant or of some other person. When the information is verified by the county attorney, it shall be sufficient if the verification is upon information and belief.

"(2) No objection to an information on the ground that it was not subscribed or verified, as above provided, shall be made after moving to quash or pleading to the merits."

We cannot agree with the defendant's interpretation of the law in question. These provisions must be considered and interpreted in connection with and in the light of section 22, article 6 of the state constitution which provides: "(Criminal procedure.)—The pleadings and proceedings in criminal causes in the courts shall be as provided by law. No cause shall be reversed for techincal error in pleading or proceedings when upon the whole case it shall appear that substantial justice has been done."

Defendant calls the court's attention to this provision of the constitution and refers

to it as having been denominated by this court as the "substantial justice" clause of the constitution. It is more than that, however. It is that provision of the constitution which gave to the legislature the power to declare the requisites of a pleading and to prescribe the proceedings in criminal cases. Section 44-705, supra, in no way invades the field of substantive law but is purely a rule of procedure promulgated by the supreme court pursuant to the provisions of chapter 8, section 1, Session Laws of 1939, section 19-202, A.C.A. 1939. The constitution, while it says that no person shall be prosecuted criminally in a court of record for a felony or misdemeanor otherwise than by information or indictment, does not require that an information be signed by any person and it is only by virtue of the provisions of section 44-705, supra, that informations must be subscribed by the county attorney. If that section is repugnant to the constitutional provisions relied upon by defendant and is therefore void then defendant has no ground at all which to predicate assignments of error 1 and 2 for the reason that there is no requirement in the law or in the rules of procedure that an information shall be signed by the county attorney except in section 44-705, supra. If the court under the authority granted it by the legislature had authority to require the county attorney to sign the information or if it had authority to do so by reason of its inherent powers to make rules necessary to facilitate the administration of justice as we have declared it to possess in a number of cases including Burney v. Lee, 59 Ariz. 360, 129 P.2d 308, it had authority to provide a limitation within which the defendant may take advantage of his failure to sign it. The legislature was clearly vested with power under the provisions of section 22, article 6, of the constitution to enact section 44-705, supra, if it saw fit to exercise that right and it had the right if it deemed it wise to do so, to withdraw from the field and leave the matter of rule making exclusively to the supreme court which it did under the provisions of chapter 8, section 1, Session Laws of 1939, section 19-202, supra. This court in the case of Burney v. Lee, supra, held that the enactment of chapter 8, supra, was a valid exercise of legislative powers under the constitution. This being true it is immaterial whether section 44-705 was promulgated by this court in the exercise of its inherent power or by virtue of legislative withdrawal from the rule-making field. Its promulgation in either event was a valid exercise of the power of the court and the rule is therefore constitutional. This being true, it follows that there is no merit to defendant's assignments of error 1 and 2.

The next question raised falling in group 2 of the assignments is that the court erred in admitting testimony of Charles E. Lane, Sr., over the objection of the defendant for the reason that it was

improper rebuttal evidence. We believe that the pronouncement made by this court in the case of McCann v. State, 20 Ariz. 489, 182 P. 96, 98, satisfactorily answers defendant's contention wherein the court said: "It is undoubtedly the rule that statements made by the accused may be shown as a part of the state's principle case, but this in no wise affects the rules pertaining to impeachment of the testimony of the accused, or the extent of the cross-examination to which he may be subjected. It is not claimed that the statements, if made, were not voluntary. *The defendant by statute is made subject to cross-examination as any other witness, and a recognized method of impeachment on the testimony of any witness is by showing statements inconsistent by the testimony given upon the trial.* The rule in that respect was strictly followed in this case, the foundation being properly laid. The questions put to the witnesses were properly allowed, and the evidence given in rebuttal, tending to show that the witness did make the inconsistent statements set forth in the impeaching questions, was properly admitted. That the state had in its main case the right to prove, and had attempted to prove to some extent, such statements, does not limit or affect the extent of the cross-examination." (Emphasis supplied.)

The language above quoted, it will be observed, applied to the statements of the defendant himself but the court points out that the rule applying to the defendant is applicable to any other witness. Therefore we hold that the state did have the right to call Mr. Lane, Senior, in rebuttal under the circumstances.

The questions raised in assignments 4, 5 and 6 are more difficult of solution. It was a rule of both the civil and common law that a party calling a witness was bound by his testimony and could not under any circumstances be heard to question the truth thereof, and that rule was strictly adhered to by both state and federal courts until after the middle of the nineteenth century except as it applied to witnesses which a party was compelled to call, such for example, as a witness to a will. In order to correct injustices arising from perjured testimony of witnesses (sometimes even induced by the other party litigant to change their testimony) various states of the Union enacted laws providing in substance that a person calling a witness would be permitted to show prior inconsistent statements, the only limitation being that he may not attack the general reputation of such a witness. The courts have invariably engrafted on to these statutes the condition that before this can be done the party calling such witnesses must satisfy the court that he has actually been taken by surprise. It then rests in the sound discretion of the trial court whether previous contradictory statements may be shown and it is only when that discretion is abused that its ruling will be disturbed. If there exists no sur-

prise such evidence should not be admitted. Certainly it may not be used as an artifice to get hearsay evidence in the record under the guise of impeaching the witness.

■ In assignments 4 and 5 defendant has failed therein to make a distinction between the right to impeach the witness and the right to cross-examine him. The right to cross-examine a witness when he testifies to something which takes the party calling him by surprise may exist when the right to impeach such witness clearly would be denied. Where a witness testifies to something different from what he was expected to testify but whose testimony is not necessarily prejudicial or damaging to the cause of the party calling him he may be cross-examined by such party for the purpose of refreshing his memory and reference may be made to former statements made or testimony given by such witness for the purpose of refreshing his memory and in aiding him to testify to the truth. Hickery v. U. S., 151 U.S. 303, 14 S.Ct. 334, 38 L.Ed. 170; State v. Treseder, 66 Utah 543, 244 P. 654; Territory v. Livingston, 13 N.M. 318, 84 P. 1021.

However, before such witness can be impeached he must have testified to some fact that was prejudicial, damaging to the party calling him. People v. Deckert, 77 Cal.App. 146, 246 P. 157. In the case of Crago v. State, 28 Wyo. 215, 202 P. 1099, 1103, is found one of the most thorough and learned discussions of this question

that we have found in any of the books. The learned Judge who wrote that opinion gave a history of the law under both the civil and common law from the Justinian Code down to the middle of the nineteenth century citing cases and excerpts from opinions of the various appellate courts, both state and federal including that of the United States Supreme Court. The court quotes with approval from the case of Briscoe v. State, 81 Tex.Cr.R. 419, 196 S.W. 183, the following language: "It is a well-settled rule that it is error to permit the state to impeach her own witness, where such witness simply fails to remember, or refuses to state facts, or fails to make out the state's case. A mere failure to make proof is no ground for impeaching a witness."

Then it proceeds to state that: "When the witness Carney in the case at bar stated that he did not remember that the defendant made an admission of the crime on the next morning, he stated no fact prejudicial or detrimental to the state; he simply failed to prove a fact which the state wanted to show. The failure to so remember was no evidence to be neutralized; after attempted neutralization, that is, after the statements were shown, the case would in legal effect stand the same as it was before, namely, that he did not remember. Hence the only purpose that could be subserved by reading into the record the previous statements made, and the only effect that this could have, would

**243**

be to cause these statements, which were hearsay, to appear to the jury as substantive evidence, the highly prejudicial effect of which is clear. It was therefore error. * * *."

To the same effect is the case of State v. Walters, 145 La. 209, 82 So. 197, wherein the court said that a district attorney might not read to a witness called by him in a criminal case, who had become hostile, testimony given by the witness before a coroner's jury where the witness did not give any testimony at the trial and denied that he had any knowledge of the matters involved. In the case of State v. Merlo, 92 Or. 678, 173 P. 317, 182 P. 153, where under the statute a party was authorized to prove previous inconsistent statements of his own witnesses, the court held that under that statute a district attorney could not, for the purpose of impeachment, interrogate his own witness concerning a prior inconsistent statement before the grand jury, the witness having given no prejudicial testimony at the trial; and that in such case the interrogation was permissible only for the purpose of refreshing the memory of the witness. In the case of Moore v. Chicago, St. L. & N. O. R. Co., 59 Miss. 243, where a witness called by the plaintiff testified that he was not present when the injuries were received and the attorney, for the purpose of attempting to impeach him and to lay the foundation therefor asked if he had not stated to him personally that he was present and saw the injuries inflcted, the court said: "* * *. It is clear that the examination ought not to have been permitted for the purpose of impeaching the credibility of the witnesses, for they had testified to nothing either in favor of or against the plaintiff, and there was no necessity to impeach their credibility for his protection. Their testimony as the case then stood, could not be considered by the jury at all, because it amounted to nothing, and as the only legitimate effect of impeaching evidence is to subtract from or overthrow the testimony of the witness, it follows that it ought not to be permitted in cases in which there is nothing to subtract from or overthrow."

With respect to the claim of the county attorney in the instant case that he was surprised by the testimony of Charles E. Lane, Sr., we are of the view that the witness having made his statement to the sheriff even though it was a year previous, to the effect that his son had called him on the night of the homicide and stated in substance that he had done what he said he was going to do, entitled the county attorney to presume that he would testify to the same thing when called as a witness. There is no legal presumption that a witness, because of his relation to a defendant, will take the witness stand and commit perjury, a felony, because of that close relationship. Whatever investigation the sheriff made as an agent of the state was made for the benefit of the

county attorney as an agent of the state in enabling him to successfully prosecute the offender and if possible, to bring the guilty to justice. The failure of the county attorney's office to personally interview the witness Lane before putting him on the stand and if possible to procure a statement in writing over his signature as soon as possible after he made the statement to Sheriff Boies and his deputy Kimball is not to be commended. But the question of whether a witness may be cross-examined by the party calling him under such circumstances lies in the sound discretion of the trial judge and that discretion will not be disturbed unless it is shown to be clearly abused. We cannot say that the facts in this case justify a holding that the court did in fact abuse its discretion. We are definitely of the opinion, however, that after Charles E. Lane, Sr., denied that his son telephoned him on the night of the murder or that he made a statement to him practically amounting to a confession of guilt, the court in permitting the peace officers to testify that he had stated to them that the defendant had telephoned and had said he had done what he said he was going to do was reversible error. The unsworn statement claimed to have been made by Charles E. Lane, Sr., to the witnesses Boies and Kimball was at the most hearsay made out of the presence of the defendant. In admitting it in evidence under the circumstances, it was shorn of the characteristics of hearsay and clothed with the sanctity of direct substantive evidence which was highly prejudicial to the defendant. The witness Charles E. Lane, Sr., in denying that his son had telephoned him or that defendant had made the statement attributed to him did not give to the court or jury any evidence that was prejudicial or damaging to the state. The most that can be said of his testimony is that he did not testify as the state expected him to testify but after he had so testified, the situation remained exactly as it was before he took the witness stand. He had simply failed to further fortify the state's case by refusing to admit that he had made a statement previously that was in conflict with the one he had testified to on the witness stand. The state had been permitted to cross-examine him which it had a right to do to refresh his recollection, to probe his conscience and to explain to the jury why the witness had been called since his testimony at the time of trial was different than what the state had expected him to testify. This constituted the limit of the state's rights under the circumstances.

We hold therefore that the trial court in permitting Sheriff Boies and his deputy Kimball to testify to a conversation with the father of defendant soon after the homicide was committed concerning an alleged conversation with defendant had the effect of admitting hearsay testimony and giving to it all the sanctity, force and effect of direct substantive evidence of a

circumstance amounting in substance to a confession of guilt. This constitutes prejudicial error.

Accordingly it is ordered that the case be reversed and remanded for a new trial.

LA PRADE, C. J., and UDALL, STANFORD, and DE CONCINI, JJ., concurring.