[Crim. No. 5296.   Second Dist., Div. One.   Mar. 21, 1955.]

THE PEOPLE, Respondent, v. TRINIDAD VERA, Appellant.

Teran & Galea and Carlos M. Teran for Appellant.

Edmund G. Brown, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

WHITE, P. J.—The district attorney of Los Angeles County filed an information against the defendant wherein she was charged in Count I with assault with a deadly weapon upon Celia Sanchez; Counts II, III, V and VI accused the defendant of the crime of assault by means of force likely to produce great bodily injury upon Celia Sanchez; and Count IV alleged the commission by defendant of the crime of mayhem (Pen. Code, § 203) allegedly committed upon Celia Sanchez.

To each count of the information defendant pleaded not guilty and not guilty by reason of insanity. The cause proceeded to trial before a jury which found her guilty as charged in each count of the information, and also found that she was sane at the time she committed the offenses of which she was found guilty. Motion for a new trial was denied and defendant was sentenced to imprisonment in the California Institution for Women on each count, the sentences to run consecutively. From the judgments of conviction and the order denying her motion for a new trial, defendant prosecutes this appeal.

The factual background surrounding this prosecution may be thus epitomized. Defendant and Joe Cruz Vera were married in 1947. At that time defendant was the mother of two daughters, Celia and Jessie. Six children were born as the issue of the marriage of defendant and Mr. Vera, and at the time of trial defendant and said Joe Cruz Vera were husband and wife. The record discloses that during the three years preceding the trial defendant committed cruel, bestial and horrible assaults upon her daughter Celia who was 9 years old at the time of trial. Defendant broke the child's arms by twisting them while holding Celia on the floor with her foot and shoulder. She burned Celia's hand with an electric iron and placed her hands in hot water. She knocked some of Celia's upper teeth out with a shoe. She flattened Celia's nose by placing the child against a wall and hitting her. She also bit Celia's fingernails down to the flesh. She twisted her fingers and popped out the knuckles, and hit her fingers on the edge of the table. She hit the child's left eye with a shoe and injured it. She also hit Celia all over her body with a piece of hose.

Since defendant does not challenge the sufficiency of the evidence to support the verdict rendered, it is unnecessary to set forth further testimony concerning the inhuman and brutal atrocities inflicted by defendant upon this unfortunate child.

In seeking a reversal of the judgments and order, appellant first contends that inasmuch as her husband, Joe Cruz Vera, was not the natural father of the victim, Celia, he was incompetent to testify against appellant without her consent and that the court committed prejudicial error in overruling her objection to his testimony.

Penal Code, section 1322, provides: ''Neither husband nor wife is a competent witness for or against the other in a criminal action or proceeding to which one or both are parties,

except with the consent of both, . . . or in cases of criminal violence upon one by the other, or upon the child or children of one by the other . . ."

Appellant relies heavily upon the case of *People* v. *Kasunic*, 95 Cal.App.2d 676 [213 P.2d 778]. In that case defendant was accused of violating section 288 of the Penal Code for offenses committed upon his stepdaughter, and one count of violation of section 288a for an act committed upon his stepson. Defendant's wife, mother of the two children, was called as a witness by the prosecution and was permitted to testify over defendant's objection that she was not a competent witness against her husband by reason of the provision in section 1322 of the Penal Code. ▮ While it is true that in the case just cited the court said (at p. 678) : "Both the intent of the Legislature and grammatical construction lead to but one conclusion, to wit, that one spouse should be permitted to testify against the other when a criminal act is charged to have been committed by one spouse *upon the child of the spouse who is called to testify*" (emphasis added), but from a reading of the language used by the court in its entirety, in the interpretation of section 1322 of the Penal Code, we are impressed it was not intended to hold that by the reservatory language used in section 1322, that before one spouse may testify against the other in a prosecution for criminal violence upon a child, the victim must be the issue of both spouses. This conclusion seems inescapable in view of the following language used by the court at pages 677, 678 : "Such a construction does violence to the intent and purpose of the statute and is contrary to grammatical construction. . . . While this statute is in derogation of the common law rule that one spouse was not a competent witness against the other in any case, the language cannot be given such a strained construction as would result in a miscarriage of justice and in rejecting a spouse's testimony in a case in which the defendant is not the parent of the child on which the offense was committed and admitting it if he or she is its parent. There can be no logical reason for holding that in a case such as this the mother of the children should not be permitted to testify because her husband, the defendant, is not the father of the children offended against and that she would be a competent witness if the defendant charged with the crime against them were their father."

So, in the case at bar, the language of the statute should not be given such a strained construction as would result

in a miscarriage of justice by rejecting a spouse's testimony in a case in which he is not the natural parent of the child involved and admitting it if he was the natural parent.

We find ourselves in accord with the holding in *Ohio* v. *Strome,* 26 Ohio Nisi Prius (N.S.) 406, where, under a statute providing that one spouse may testify against the other in a criminal case where the charge involves cruelty to "their children," the court in ascribing to those words their ordinary meaning, held that the term "child" includes stepchild, and that the statute applies in a case involving a stepchild. Having in mind the end sought to be achieved by the reservatory language of section 1322 of our Penal Code and the evils sought to be remedied, we see no logical reason to assume that the Legislature did not intend the term "child" as used in said section to include stepchild and that exception to the incompetency of the spouse to testify should not apply in cases of criminal violence committed by one spouse upon the stepchild of the other spouse. ██ Moreover, even if it be conceded that the ruling of the trial court in admitting the testimony of the stepfather was error, the facts established by his testimony were all established by the testimony of the child as to the beatings and cruelties visited upon her by her mother, as well as by the detailed confessions of the beatings given by the mother. The testimony of the step-father was merely cumulative and therefore, not prejudicially harmful. ██ Also, it is firmly established in our law that a judgment will not be set aside in any case on the ground of improper admission or rejection of evidence unless, after an examination of the entire cause, including the evidence, the appellate tribunal shall be of the opinion that the error complained of has resulted in a miscarriage of justice (Cal. Const., art. VI, § 4½).

Giving consideration to the other evidence above referred to, we cannot see how the exclusion of the testimony of the stepfather could have resulted in any verdicts other than those rendered. Therefore, there was no prejudice or miscarriage of justice resulting to appellant (Cal. Const., *supra*; *People* v. *Epstein,* 21 Cal.App.2d 488, 490 [69 P.2d 454]; *People* v. *Forman,* 67 Cal.App. 693, 700 [228 P. 1022]).

Finally, appellant contends that it was prejudicial error in detail, a mimeographed transcription of a conversation had by the witness and another officer with appellant. It is the latter's contention that if the document was used to refresh to permit a witness for the prosecution to read to the jury,

the recollection of the witness it should not have been read to the jury, but merely examined and read by the witness before he testified. It is further contended that if the witness had used the memorandum as past recollection recorded, it should have been introduced in evidence, but that it was inadmissible as evidence because the tape recording, and not the memorandum was the best evidence.

The record reflects that subsequent to the arrest of appellant, Sergeants Flouton and Barner had a conversation with her. It is conceded that all of the statements which appellant made were free and voluntary; that no force was used upon her and no threats nor promises of immunity were made to her. A tape recording was made of the conversation. Then, to quote the unchallenged narrative as to subsequent events, contained in respondent's brief, "On July 6th a legal statement reporter in the District Attorney's office went to the sound laboratory in that office and listened to the recording. She wrote the words that she heard down in shorthand and transcribed those notes in a rough draft. . . . The next day Sergeant Flouton and she checked the transcript which she had made from her notes against the recording, and Sergeant Flouton supplied certain words which she had not been able to understand completely from the recording, and they were inserted into the rough draft. . . . The rough draft was rechecked with the recording, and the reporter then typed mimeograph stencils from the rough draft. She compared the stencils with the rough draft and they were 'right.' . . . The reporter and a clerk ran the mimeograph stencils off and assembled the pages. . . . Deputy Sheriff Flouton read a mimeographed copy. . . . It was a true and correct transcription of the conversation that was had between the Sergeants Flouton and Barner and the appellant."

On the witness stand Deputy Sheriff Flouton testified that he was present at the conversation with appellant and that he required the mimeographed document to refresh his recollection as to all the details of the conversation. He was asked to read the document and he did so, but the document itself was not introduced into evidence.

We perceive no error in the ruling of the court. Section 2047 of the Code of Civil Procedure allows a witness to refresh his memory "respecting a fact, by anything written by himself, or under his direction, at the time when the fact occurred, or immediately thereafter, or at any other time

when the fact was fresh in his memory, and he knew that the same was correctly stated in the writing. But in such case the writing must be produced, and may be seen by the adverse party, who may, if he choose, cross-examine the witness upon it, and may read it to the jury. So, also, a witness may testify from such a writing, though he retain no recollection of the particular facts, but such evidence must be received with caution.''

Answering a similar challenge as the one here made, and under more or less similar circumstances, the court, in *People* v. *Sica,* 112 Cal.App.2d 574, 587 [247 P.2d 72], speaking through Mr. Justice Fox, said: ''Defendants' contention that the memoranda used to refresh the recollection of the officers was improperly prepared cannot be sustained. The requirements of section 2047 of the Code of Civil Procedure were fully satisfied by the nature of the writing used to refresh the officers' recollection. The transcriptions made by the stenographer under the direction of the police officers came from recordings of conversations which had been concurrently overheard by the officers. These transcriptions were corrected by the officers to correspond with what each had actually heard soon enough after the conversation to make the memoranda accord with their recollections while the events were still fresh in their memories. That a witness may refresh his memory with a memorandum so prepared is abundantly supported. (*People* v. *Deckert,* 77 Cal.App. 146, 151 [246 P. 157] . . .; *People* v. *Amaya,* 44 Cal.App.2d 656, 658 [112 P.2d 942] . . .; *People* v. *Zammora,* 66 Cal.App.2d 166 [152 P.2d 180] . . .) The record shows that the officers simply used the memoranda to refresh their memories as to information directly obtained by them.''

In the instant case a rough transcript was made by a reporter, Sergeant Flouton then took it, listened to the recording, and supplied portions which were lacking in the rough draft. The rough draft being a document prepared under the sergeant's direction, fully met the requirements of section 2047 of the Code of Civil Procedure, and it was proper for him to use it at the trial to refresh his recollection of the conversation.

Appellant's contention that if the document was used to refresh the present memory of the witness, the latter should have referred to the writing and then testified, independent of the memorandum—as of his own personal recollection, is answered by the court in *People* v. *Brown,* 3 Cal.App. 178, 179

[84 P. 670], wherein it is said: "And the rule is not different where the witness has a copy of the original in his hands, which he has compared, and swears that the same is an exact copy of the original memorandum." (See also *Anderson* v. *Souza*, 38 Cal.2d 825, 832 [243 P.2d 497].)

In the case now engaging our attention, the reporter testified that the mimeographed stencils from which the copy testified from was made were "right," and the witness Sergeant Flouton testified that the document contained a correct transcription of the conversation, and that he required the document (which contains 16 pages) in order to refresh his memory as to exactly what was said during the conversation. We, therefore, conclude that a proper foundation was laid for the reading of the document in question (*People* v. *Zammora*, 66 Cal.App.2d 166, 224 [152 P.2d 180]; *People* v. *Deckert*, 77 Cal.App. 146, 149, 152 [246 P. 157]; *People* v. *Burns*, 109 Cal.App.2d 524, 539, 540 [241 P.2d 308]).

In no sense, however, was the document here used to revive the recollection of the witness' testimony, evidence, and the prosecution properly refrained from offering it as such and relied upon primary evidence of the conversation as shown by the testimony of Sergeant Flouton concerning what he had seen and heard (*People* v. *Sica, supra,* pp. 587, 588), although the adverse party, appellant herein, if she so desired, could have treated the writing as evidence (*Hawkins* v. *Sanguinetti,* 98 Cal.App.2d 278, 284 [220 P.2d 58]; *People* v. *Deckert, supra,* p. 149).

For the foregoing reasons the judgments and the order denying defendant's motion for a new trial are, and each is affirmed.

Doran, J., and Drapeau, J., concurred.