350 P.2d 681

STATE of Arizona, Appellee,

v.

Benjamin HITCHCOCK, Appellant.

No. 1126.

Supreme Court of Arizona.

March 23, 1960.

278

Patrick W. O'Reilly, Phoenix, for appellant.

Wade Church, Atty. Gen., Leslie C. Hardy, Chief Asst. Atty. Gen., Franklin K. Gibson, Asst. Atty. Gen., for appellee.

PHELPS, Justice.

The appellant, Benjamin Hitchcock, hereinafter referred to as defendant was convicted in the Superior Court of Maricopa County of murder in the first degree and sentenced to life imprisonment. The first count of the information charged him with having killed one Ernest A. DiVito while in the commission of a robbery; the second and third counts charged him with kidnaping. The defendant was acquitted of the kidnaping charges but was found guilty of murder in the first degree. The applicable statutes upon which the murder count of the information was based are as follows:

A.R.S. § 13–451

"A. Murder is the unlawful killing of a human being with malice aforethought.

"B. Malice aforethought may be express or implied. It is express when there is manifested a deliberate intention unlawfully to take away the life of a fellow creature. It is implied when no considerable provocation appears or when the circumstances attending the killing show an abandoned and malignant heart."

A.R.S. § 13–452

"A murder which is perpetrated by means of poison or lying in wait, torture or by any other kind of wilful, deliberate and premeditated killing, or which is committed in the perpetration of, or attempt to perpetrate, arson, rape, robbery, burglary or mayhem, is murder of the first degree. All other kinds of murder are of the second degree."

From that verdict and judgment and from the court's order denying defendant's motion for a new trial, the defendant brings this appeal.

The facts are that the defendant appeared at the office of Ernest DiVito on the morning of the 16th of October and asked the secretary, Miss Audrey Wedlock, if they had received final payment on a contract which they had recently completed, claiming that deceased owed him money which he had promised to pay when final payment was made on said contract. She replied that it had not been paid. As Ernest DeVito emerged from a rear office defendant pulled a gun. He removed two checkbooks from the secretary's desk and after examining the balance shown in one, put them into his pocket. He then took a check protector in his right arm and at gun point ordered Ernest DiVito and the secretary, Miss Wedlock, to go with him.

As defendant was backing Ernest DiVito's car out of the driveway, his brother, Anthony DiVito, arrived. A struggle for

possession of the gun resulted in its being thrown into the street. But before defendant was completely subdued, he produced a second gun which he discharged two times. One of the projectals struck Ernest DiVito, passing through his arm and chest and lodging in his third dorsal vertebrae, resulting in his death.

Defendant makes three assignments of error, the first of which is stated as follows:

"The verdict rendered is not supported by the evidence and is contrary to law in that there was insufficient evidence to support a conviction of the crime of homicide in the perpetration or attempt to perpetrate a robbery for the reasons that:

"A. The evidence disclosed that the killing of another was committed after the perpetration or attempt to perpetrate the crime of robbery was at an end and had been abandoned by the defendant.

"B. There was insufficient evidence of the necessary element of a taking of personal property in the possession of another from his person, or immediate presence."

The first part of this assignment of error charges that the evidence discloses that the robbery was at an end when the killing occurred and implies that therefore the felony-murder rule should not have been applied. The basis of defendant's argument in connection with this contention is found in Anthony DiVito's testimony on cross-examination. After this witness had testified that he had apparently disarmed the defendant by throwing the first gun into the street, counsel for defendant skillfully gained an affirmative answer to the following question:

"So, you pulled him out in order to beat him up, to have a legal fight with him?"

It is defendant's contention that at this point in time he had been subdued and that the robbery or attempted robbery was at an end. Contrariwise, an examination of the transcript in this case totaling over 750 pages and bound in three volumes does not sustain the defendant's position. There was no appreciable span of time nor appreciable change in the respective position of the parties between the disarming of defendant and the shooting; nor any overt act on the part of the defendant which would indicate to those present that he had abandoned the robbery or that it was at an end. The evidence indicates that the events which transpired immediately preceding the shooting occurred in rapid sequence and as a part of the chain of events which defendant's deliberate acts had set in motion. The clear import of the evidence is that defendant had not been subdued or even apparently subdued at that point in time when he had been seemingly disarmed.

And the remainder of Anthony DiVito's testimony makes it equally clear that his purpose in pulling defendant out of the car in order to "have a legal fight with him," was to restrain him until the police arrived.

A well-reasoned opinion cited by the State, Commonwealth v. Almeida, 362 Pa. 596, 68 A.2d 595, 599, 12 A.L.R.2d 183, thoroughly discusses this problem. In applying the felony-murder rule the court held the defendant accountable for the death of a policeman attempting to apprehend the defendant although the fatal shot may have been fired mistakenly by another policeman. In so ruling, the court cited numerous criminal and civil cases as well as many of the most noted authorities. The court there said:

"Our decision in the Moyer-Byron case [Commonwealth v. Moyer (Commonwealth v. Byron), 357 Pa. 181, 53 A.2d 736], was an application of the long established principle that he whose felonious act is the *proximate cause* of another's death is *criminally* responsible for that death and must answer to society for it exactly as he who is *negligently* the *proximate cause* of another's death is *civilly* responsible for that death and must answer in damages for it. Wharton on *Homicide*, Third Edition, p. 30, says under the heading of 'Causal Connections' that: ' * * *

one whose wrongful act hastens or accelerates the death of another, or contributes to its cause, is guilty of homicide, though other causes co-operate. And he is guilty *if his act was the cause of the cause of death, if the relation was causal,* and the injured condition was not merely the occasion upon which another cause intervened not produced by the first injury, or related to it in any other than a causal way, then the person inflicting the injury is guilty of homicide.' Professor Joseph H. Beale of Harvard Law School in an article entitled 'The Proximate Consequences of an Act,' 33 Harvard LR 633, 646, said: 'Though there is an active force intervening after defendant's act, *the result will nevertheless be proximate if the defendant's act actively caused the intervening force.* In such a case the defendant's force is really continuing in active operation, *by means of the force it stimulated into activity.* * * * Defendant may by his conduct so affect a person or an animal as to stir him to action; the result of such action is chargeable to defendant. * * *'"

In Commonwealth v. Byron, 357 Pa. 181, 53 A.2d 736, 741, the court made a statement which is especially germane to this case:

"* * * For any individual forcibly to defend himself or his family

or his property from criminal aggression is a primal human instinct. It is the right and duty of both individuals and nations to meet criminal aggression with effective countermeasures. Every robber or burglar knows when he attempts to commit his crime that he is inviting dangerous resistance. * * *"

Nothing could be more natural than for one to intervene where a member of his family is being held at gun point as did Anthony DiVito in this case.

The second part of defendant's first assignment of error charges that:

"There was insufficient evidence of the necessary element of a taking of personal property in the possession of another from his person, or immediate presence."

It is argued that since the jury found defendant not guilty of kidnaping Ernest DiVito and his secretary, that they accompanied defendant of their own free will. It is said to necessarily follow that the property of which defendant was charged with taking by force or fear was never out of the presence or the possession of the deceased; and consequently, there was no taking as is necessary to constitute the crime of robbery under the statute.

 The answer to the last above claim is that the law relating to robbery does not require the property to be taken out of the presence of the person robbed.

It is sufficient if the taking is from the person of one who is robbed or in his immediate presence. In either case if the person robbed is killed the killing constitutes murder in the first degree under A.R.S. § 13–452, supra. In instructing the jury on the felony-murder rule as it is applied under our statutes, the court correctly stated:

"Ladies and gentlemen of the jury, you are further instructed that if a human being is killed by another person *while such person is engaged in the perpetration of, or an attempt to perpetrate the crime of robbery,* such person doing the killing under such circumstances is guilty of murder of the first degree, regardless of whether the killing is intentional or unintentional. * * *" (Emphasis supplied.)

Suffice it to say that the jury in finding defendant guilty was apparently satisfied beyond a reasonable doubt that there was a taking of property in the commission of robbery and that defendant was still engaged in the perpetration of robbery when the killing occurred.

Another shortcoming of defendant's argument is the assumption that the jury's finding that the defendant was not guilty of kidnaping Ernest DiVito and his secretary is tantamount to a finding that they accompanied defendant of their own free will. Examining the instructions again, we

find that the jury was instructed as follows concerning the law of kidnaping:

"I will now define to you what is known in law as kidnaping so far as it applies to this case. A person who kidnaps or carries away any individual by any means whatsoever with intent to detain is guilty of kidnaping.

"You will observe that *an essential element of the crime charged* against the defendant in counts two and three of the information *is a specific intent to detain a person subjected to the offense.* This intent must be a motivating purpose of the act, although it need not be the only such purpose. Therefore, one cannot be guilty of such a crime unless his conduct is motivated by such an intent." (Emphasis supplied.)

Under the foregoing instruction, the jury in finding the defendant not guilty of the kidnaping charges might very well have done so on the basis that *defendant* lacked the requisite specific intent to detain them. But it does not necessarily follow that in accompanying the defendant they *freely* did so.

Another deficiency in defendant's argument is his position that inasmuch as the deceased was in defendant's presence after defendant took the articles, there was no asportation. A.R.S. § 13–641, defines robbery as follows:

"Robbery is the felonious taking of personal property in the possession of another from his person, or immediate presence, and against his will, accomplished by means of force or fear."

Our Legislature in adopting this statute from California employed its identical language. The California cases construing it therefore, are particularly helpful. In People v. Beal, 3 Cal.App.2d 251, 39 P. 2d 504, 505, the court discussed this problem as follows:

"They argue that the words 'taking of personal property * * * from his * * * immediate presence' must be construed as meaning the taking of personal property in the immediate presence of the lawful possessor and taking it out of and completely away from the presence of such person. From this they contend that, as Marcelo took the money from the immediate presence of the employees of the bank, but was apprehended before he carried it outside of the room in which the bank was located, he did not take it from their immediate presence, and that appellants could be convicted of nothing more serious than an attempt to commit robbery.

"We cannot agree with the contention of appellants, nor can we presume that the Legislature intended that we put any such strained and unreasona-

ble construction upon the language of this section. The crime of robbery is complete when the robbers without lawful authority and by means of force or fear obtain possession of the personal property of another in the presence of its lawful custodian and reduce it to their manual possession. It is not necessary that, to complete the crime, they carry it out of the physical presence of the lawful possessor or make their escape with it."

See also People v. Clark, 70 Cal.App.2d 132, 160 P.2d 553; People v. Quinn, 77 Cal. App.2d 734, 176 P.2d 404, and Duffy v. Hudspeth, 10 Cir., 112 F.2d 559, to the same effect. In People v. Quinn, supra, defendants armed with a pistol, ordered the victim out of his automobile and to throw his wallet on the ground. They then compelled him to pick it up again to show whether it contained any money. Notwithstanding that the victim was allowed to keep his wallet when it was found to contain no money, the California court held that there had been a sufficient taking to sustain the conviction of robbery under the statute. In so holding, the court said [77 Cal.App.2d 734, 176 P.2d 405]:

" * * * Reliance is placed on the reference to manual possession in People v. Beal, 3 Cal.App.2d 251, 39 P.2d 504, and People v. Clark, 70 Cal. App.2d 132, 160 P.2d 553. In the first of these cases it was said [3 Cal.App. 2d 251, 39 P.2d 505] 'The crime of robbery is complete when the robbers without lawful authority and by means of force or fear obtain possession of the personal property of another in the presence of its lawful custodian and reduce it to their manual possession.' That language was applicable to the facts in those cases but it was not intended to establish a fixed rule of law that the crime of robbery could not be complete unless the property in question was actually taken into the hands of the robber. * * * It would be a strained and unreasonable construction of the language of the statute to interpret it as necessarily requiring the taking of the stolen property into the hands of the one committing the robbery. The property taken might be a horse or a cow forcibly taken from the immediate presence and possession of the victim. It would be possible to feloniously take such property from the possession and immediate presence of the victim, but it would be obviously impossible to take such property into the hands. * * * "

We have cited the Quinn case, supra, because counsel for defendant, contrary to the testimony of the deceased's secretary, Miss Wedlock, but in accord with the defendant's testimony, contends that the deceased and not the defendant carried the items from the office to the car. In the

instant case, evidence that the articles were removed from the victim's office at gun point by the direction of defendant is a sufficient taking to sustain the conviction of robbery under the statute.

■ Defendant's second assignment of error alleges that:

"The Court erred in not ordering a mistrial or admonishing the jury to completely disregard the remarks of bystanders in the Courtroom derrogatory to defendant for the reason that such remarks were prejudicial to defendant and deprived him of a fair and impartial trial."

This raises the question of whether the remarks of a bystander made in the courtroom so influenced the jury as to deprive him of a fair and impartial trial. During the trial a deputy sheriff, who guarded the defendant, reported to the court that during a recess and as the jury was passing out of the courtroom, a member of the audience stated in a voice in tones that were louder than is normally used in conversation:

"He kidnaped him at the point of a gun; he kidnaped him at the point of a gun."

The deputy reported that this comment was made just as the jury was passing between the person speaking and himself, so there can be little doubt that it could have been heard by them. Counsel for defendant moved for a mistrial on the ground that the incident had prejudiced the defendant. On Appeal it is asserted that the court erred in failing to order a mistrial or admonish the jury to completely disregard the remarks of bystanders in the courtroom.

It is submitted by the attorneys on behalf of the State that during the trial the defendant moved for a mistrial and not for the court to instruct the jurors to disregard the matter; that the observation of the court showed that he had not heard the disturbance and that he had previously admonished the jury to report to him any discussion of the case which they might hear and that nothing had been reported to him; that there was no showing that any of the jurors did in fact hear the remark, and that even if a juror did hear the remark and failed to report it, it cannot be stated that defendant was prejudiced thereby for the matter stated had previously been testified to on the witness stand.

It is the observation of this court, however, that the verdict cured any error which the trial court committed, if any, in failing to direct a mistrial or to admonish the jury. This is true for the reason that the verdict rendered, made the issue in this court moot. The only reason for a judge to declare a mistrial or admonish the jury in such cases is to protect the defendant from the possibility of prejudice being generated in the minds of the jurors.

The jury's verdict that the defendant *was not guilty* of the kidnaping charges is conclusive as a matter of law that the remark alluded to [that defendant had kidnaped him at gun point] *did not* arouse such prejudice in their minds.

Defendant's third assignment of error charges that:

"The Court erred in giving State's Requested Instruction No. 1, for the reasons that:

"A. Such instruction assumes the defendant's commission of the crime of robbery and is therefore a comment on the evidence.

"B. That such instruction is not a correct statement of the law in that it is so broad it encompasses any killing under any circumstance which occurs in the course of a robbery where defensive forces are called in against a defendant, and requires a finding that such killing is murder in the first degree."

The above assignment of error alleges that the following jury instruction was erroneous in two particulars:

" * * * *A person who is engaged in the commission of the crime of robbery* which calls into action defensive forces against him, the activity of which results in the death of a human being, is guilty of murder in the first degree." (Emphasis by defendant.)

It is first contended that the instruction as set forth assumes the fact that the defendant was engaged in the crime of robbery and constitutes a comment on the evidence.

■ Taking the instructions in their entirety, however, as they are received by the jury, it is impossible to follow the defendant's reasoning that the instruction assumes that he was engaged in the robbery. The above quotation is only a small portion of the instruction given on that point. To illustrate what we mean, we shall quote some of the most illuminating ones relating to the crime of robbery. The jury was fully instructed concerning their duties as to all phases of the case. They were told for example to:

"Predicate your verdicts solely upon the facts as you find them from the evidence and the law as given you by the Court. If in these instructions any rule, direction or idea be stated by the Court in varying ways, no emphasis thereon is intended by me and none must be inferred by you. You are not to single out any certain sentence or any individual point or instruction and ignore the others, but you are to consider all the instructions as a whole and to regard each in the light of all the others.

\* \* \* \* \* \*

"The defendant is charged in count one of the information with the crime of murder in the first degree, to-wit, that on or about October 16, 1957, the defendant did kill one Ernest DeVito while engaged in the commission of a robbery. To sustain its burden of proof, as far as count one is concerned, the State must satisfy you beyond a reasonable doubt that the said Ernest DeVito was killed by the defendant on or about October 16, 1957, while the defendant was engaged in the commission of a robbery. *If you determine that the defendant was not engaged in the commission of a robbery at the time Ernest DeVito was killed, then you have no alternative but to acquit the defendant on count one of the information.* [Emphasis added by this Court.]

"Ladies and gentlemen of the jury, you are further instructed that if a human being is killed by another person while such person is engaged in the perpetration of, or an attempt to perpetrate the crime of robbery, such person doing the killing under such circumstances is guilty of murder of the first degree, regardless of whether the killing is intentional or unintentional. A person who is engaged in the commission of the crime of robbery which calls into action defensive forces against him, the activity of

which results in the death of a human being, is guilty of murder in the first degree.

"Under the evidence in this case and the instructions I have given you, ladies and gentlemen, if you find beyond a reasonable doubt the defendant, Benjamin Hitchcock, in the manner and form and at the time charged in the information killed Ernest A. DeVito while he, the said defendant, was engaged in the perpetration or attempt to perpetrate the crime of robbery as above defined, it will be your duty to find the defendant guilty of murder in the first degree. If you fail to so find beyond a reasonable doubt from the evidence in this case and under the instructions I have given you, then you will find the defendant not guilty."

▌ It is next contended by defendant that the disputed instruction is too broad and is therefore an incorrect statement of the law. In the cases cited by defendant the instructions were so broad that they did not require the jury to find a causal connection between the killing and the robbery. The instruction in the instant case, however, requires the jury to first find that the robbery caused defensive forces to be called into action, and second, that the activity of the defensive forces thus called into activity caused the death of a human

being. Hence, the instruction is to the effect that a death resulting from or being the proximate result of a robbery is murder.

For the foregoing reasons the judgment of conviction of Benjamin Hitchcock is hereby affirmed.

STRUCKMEYER, C. J., and UDALL, JOHNSON and BERNSTEIN, JJ., concur.