541 P.2d 921
**STATE of Arizona, Appellee,**
**v.**
**Fernando Fred FERRARI, Appellant.**
**No. 3057.**

Supreme Court of Arizona,
In Banc.
Oct. 23, 1975.

Joseph A. Lovallo and Theodore Knuck, Tucson, for appellant.

Bruce E. Babbitt, Atty. Gen. by Shirley H. Frondorf and William J. Schafer, III, Asst. Attys. Gen., Phoenix, for appellee.

O'CONNOR, SANDRA D., Superior Court Judge.

Fernando Fred Ferrari ("appellant") was convicted by a jury of first degree murder and first degree burglary. He was sentenced to life imprisonment on the murder charge and to ten to fifteen years on the burglary charge. Appellant asserts there were nine errors requiring reversal committed during the course of the trial. The essential facts giving rise to the charges will be related during our discussion of the various alleged errors at the trial.

### Basis of Appeal

We are asked to answer the following questions on appeal:

1. Did the court err in giving the following jury instruction after the jury asked whether a conviction of first degree burglary automatically means guilt of first degree murder?

   "You are instructed that if a human being is killed by any one of several persons engaged in the perpetration

of, or attempt to perpetrate, the crime of burglary, all persons who either directly and actively commit the act constituting such crime or who knowingly and with criminal intent aid and abet in its commission, or who advise and encourage its commission are guilty of murder of the first degree *whether the killing is intentional, unintentional, or accidental.* (Emphasis added.)

"You must consider this instruction in connection with all of the other instructions which have been given to you."

2. Was it reversible error to allow the admission into evidence of various hearsay statements of alleged co-conspirators when there allegedly was no independent evidence of a conspiracy?

3. Was it reversible error to permit appellee to ask allegedly prejudicial warning questions of appellee's witness, Brummer, when the court had previously ruled that appellee would not be allowed to impeach Brummer by evidence of a prior inconsistent statement and when the witness had already testified that he did not recall anything which occurred on the night of the alleged murder?

4. Did the court err in denying appellant's motion in limine to exclude the testimony of Jack Dempsey Van Noy, Jr., alleged agent of the prosecution?

5. Did the court commit reversible error when it denied the appellant's motion for change of venue?

6. Did the court commit reversible error when it denied appellant's motion to exclude allegedly prejudicial and inflammatory pictures?

7. Was it reversible error to deny appellant's motion in limine to prevent testimony and instruction regarding the flight of appellant and in granting appellee's requested instruction concerning flight of the accused after a crime had been committed, since there allegedly was no evidence of flight, as flight is described and defined by law?

8. Was it reversible error to grant appellee's motion to have the court call the witnesses, Anne Chapman and Nancy Campbell, as court witnesses in order to allow cross-examination of those witnesses by appellee?

9. Was it reversible error to deny appellant's motion in limine to suppress the testimony of Cryle "Terry" Beaver who allegedly had previously lied?

*Instruction on Felony Murder Doctrine*

Appellant and a co-defendant, Lawrence P. Brummer, were charged with first degree murder and burglary in connection with the death of David Chapman. There were no eye witnesses to the crimes.

After the jury had deliberated approximately twelve hours, it asked the court the following question: "Does the conviction on first degree burglary automatically mean guilt of first degree murder?"

The court gave the following instruction in answer to the jury's question:

"You are instructed that if a human being is killed by any one of several persons engaged in the perpetration of, or attempt to perpetrate, the crime of burglary, all persons who either directly and actively commit the act constituting such crime or who knowingly and with criminal intent aid and abet in its commission or who advise and encourage its commission, are guilty of murder of the first degree *whether the killing is intentional, unintentional, or accidental.* (Emphasis added.)

"You must consider this instruction in connection with all of the other instructions which have been given to you."

The jury then returned verdicts finding appellant guilty of first degree burglary and first degree murder.

■ Murder is the unlawful killing of a human being with malice aforethought. A.R.S. § 13–451. A murder which is committed in the perpetration of burglary or any of the other specifically named felonies is murder in the first degree (A.R.S. § 13–452) whether willful and premeditated or only accidental. *State v. Hitchcock,* 87 Ariz. 277, 350 P.2d 681 (1960), cert. denied, 365 U.S. 609, 81 S.Ct. 823, 5 L.Ed.2d 821 (1961); *State v. Collins,* 111 Ariz. 303, 528 P.2d 829 (1974); cf. *In re Anonymous, Juvenile Court No. 6358–4,* 14 Ariz.App. 466, 484 P.2d 235 (1971). This court in *State v. Hitchcock,* supra, held that the trial court properly instructed the jury on the felony murder rule in Arizona when it gave the following instruction:

"Ladies and gentlemen of the jury, you are further instructed that if a human being is killed by another person while such person is engaged in the perpetration of, or an attempt to perpetrate the crime of robbery, such person doing the killing under such circumstances is guilty of murder of the first degree, regardless of whether the killing is intentional or unintentional." 87 Ariz. at 287, 350 P.2d at 687.

In *State v. Collins,* supra, 528 P.2d at 832, this court noted:

". . . the jury was informed that if they believed a robbery had been committed or attempted and a human being had been *killed* in the perpetration of or attempt to perpetrate such robbery, that they should find the defendant guilty of first degree murder. . . . (Emphasis added.)

"A.R.S. § 13–451 provides that murder which is committed in the perpetration of or attempt to perpetrate robbery is murder of the first degree. Having found the defendant guilty of robbery, they could not then find the defendant guilty of an inferior degree of homicide."

The holding of this Court in *Eytinge v. Territory,* 12 Ariz. 131, 100 P. 443 (1909),

the case relied upon by appellant, has in effect been overruled by the later Arizona cases cited above.

■ Homicide is murder if the death results from the perpetration or attempted perpetration of one of the specific offenses listed in A.R.S. § 13–452. The specific intent for the felony, in this instance burglary, supplies the necessary element of malice or premeditation. *State v. Howes,* 109 Ariz. 255, 508 P.2d 331 (1973).

■ The trial court's instruction in response to the jury's question in this case was not error when considered together with all of the other instructions previously given by the court.

### Hearsay Statements of Alleged Co-Conspirators

Appellant argues that the trial court committed reversible error by allowing into evidence various hearsay statements by witnesses, Anne Chapman and Agnes L. "Nancy" Campbell, on the basis that they were co-conspirators with insufficient independent evidence of the existence of the conspiracy. Appellant does not specify the particular hearsay statements of the witnesses which he asserts constitute reversible error.

■ The general rule is that declarations of co-conspirators made in furtherance of the conspiracy and while the conspiracy is continuing are admissible provided the existence of the conspiracy is proved independently. *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *Territory v. Turner,* 4 Ariz. 290, 37 P. 368 (1894); 4 Wigmore, Evidence (Chadbourn rev. 1972) § 1079(1)(a); McCormick, Evidence 2d Ed.1972, § 267, p. 645. The trial court judge in his discretion may vary the order of proof and admit the declaration contingent upon the later production of the prima facie independent proof of the conspiracy. *State v. Cassidy,* 67 Ariz. 48, 190 P.2d 501 (1948); *United States v. Halpin,* 7 Cir., 374 F.2d 493, cert. denied, 386 U.S. 1032, 87 S.Ct. 1482, 18 L.Ed.2d 594 (1967).

Appellant has not specified the particular hearsay statements on which he relies in asking that the judgment be reversed. Normally, in such instances the court will not review the transcript on appeal to search for the evidence to overturn the judgment. *Love v. Bracamonte,* 29 Ariz. 227, 240 P. 351 modified on other grounds 29 Ariz. 357, 241 P. 514 (1925); *Grounds v. Lawe,* 67 Ariz. 176, 193 P.2d 447 (1948). However, in view of the gravity of the charges against appellant in this case, the transcript has been reviewed to determine whether fundamental error occurred requiring the verdict and judgment of guilt to be overturned on the ground that there was insufficient independent *prima facie* evidence of a conspiracy to justify admission of those hearsay statements of Anne Chapman and Nancy Campbell which were admitted over appellant's objection.

The evidence relied upon by appellee, to establish prima facie and independently the existence of the conspiracy between appellant and Anne Chapman and Nancy Campbell to commit burglary or murder, is purely circumstantial. Essentially such evidence shows that the victim, David Chapman, and Anne Chapman, his wife, had quarrelled and physically fought approximately a week before David's death and had separated. Anne Chapman and her daughter, Nancy Campbell, were living together. Both of them disliked and feared David Chapman. Nancy Campbell and appellant were dating each other and having sexual relations. They saw each other frequently during the week prior to David Chapman's death. David and Anne Chapman and Nancy Campbell and appellant had seen each other the day of David's death at the Ox Bow Tavern, where arguments had taken place between David and Anne and between David and appellant. Both appellant and Lawrence Brummer had been seen during that same day with guns in their possession.

Later David and Anne resolved their differences, went to the house where David was staying and had sexual relations. Thereafter, Anne left David dozing on the bed and returned to her home with David's car keys, his wallet and his color television set. Appellant, Nancy, Carroll Shreve, aka Jack Lane, and Lawrence Brummer all met at Anne's and Nancy's house and were there when Anne returned with the keys, wallet and television set. Subsequently, Anne, appellant, Carroll Shreve and Lawrence Brummer all drove to David's house to take his car and remove some tires therefrom which allegedly belonged to Nancy Campbell. In route, appellant stated that ". . . somebody had been giving him a hard time and he was going to whip him." Shreve drove away with Anne in David's car without seeing David. Shreve testified he saw appellant and Lawrence Brummer entering David Chapman's house as Shreve and Anne Chapman left the premises.

Within a short time thereafter appellant and Lawrence Brummer appeared at a nearby bar, and appellant called Nancy who joined appellant at the bar. At about midnight, after David's death, Anne Chapman made arrangements for Harold Hollis to go to David's house with her when David had not appeared to meet Anne about 11:30 P.M. as she said he had agreed to do. Anne and Harold Hollis found David Chapman's dead body in the house.

There was also evidence that appellant had asked Harold Hollis a few days prior to David's death where David was staying because appellant wanted to talk to David about "roughing up Anne and Nancy."

The evidence noted above is sufficient in our opinion to sustain the trial court's determination of prima facie proof by independent evidence of the existence of a conspiracy between Anne Chapman, Nancy Campbell and appellant to at least enter David's house for the purpose of committing some felony therein. The various hearsay statements of Anne Chapman and Nancy Campbell objected to by appellant were properly admitted by the trial court

as being made during the continuance and in furtherance of the conspiracy.

### Cross Examination by Appellee of Its Own Witness

During the course of the trial, Lawrence P. Brummer, a co-defendant who had already been tried and convicted in a separate trial of the murder of the victim, David Chapman, was called as one of appellee's witnesses against appellant. At Brummer's own trial, he did not take the stand and testify.

Brummer testified in appellant's trial that he did not remember the events in question. Appellee then moved to be allowed to impeach Brummer by prior inconsistent and inculpatory statements made by him to several other persons. The trial judge denied appellee's motion to impeach but allowed it to cross-examine the witness, Brummer, to refresh his recollection by asking him whether he remembered making the various inculpatory statements to other individuals.

Appellant asserts that where the court has already ruled that impeachment of Brummer by appellee would not be permitted, the effect of permitting appellee to ask Brummer the warning questions on cross-examination was prejudicial and permitted the introduction of hearsay evidence.

We held in *State v. Lane,* 69 Ariz. 236, 242, 211 P.2d 821, 824–25 (1949), that

"The right to cross-examine a witness when he testifies to something which takes the party calling him by surprise may exist when the right to impeach such witness clearly would be denied. Where a witness testifies to something different from what he was expected to testify but whose testimony is not necessarily prejudicial or damaging to the cause of the party calling him he may be cross-examined by such party for the purpose of refreshing his memory and reference may be made to former statements made or testimony given by such witness for the purpose of refreshing his memory and in aiding him to testify to the truth. *Hickory v. U. S.,* 151 U.S. 303, 14 S.Ct. 334, 38 L.Ed. 170; *State v. Treseder,* 66 Utah 543, 244 P. 654; *Territory v. Livingston,* 13 N.M. 318, 84 P. 1021."

In *State v. Lane, supra,* 69 Ariz. at p. 242, 211 P.2d at 825, this Court went on to note that before a witness can be impeached, he must have testified to some fact that was prejudicial or damaging to the party calling him, and that it is error to allow the state to impeach its own witness where the witness simply fails to remember.

*State v. Lane, supra,* was cited with approval in *State v. Skinner,* 110 Ariz. 135, 143, 515 P.2d 880, 888 (1973), as follows:

"In the Lane case, we indicated that while surprise is a condition precedent to cross-examining one's own witness, adversity or prejudice is a condition precedent to impeachment of one's own witness."

In this case, Brummer by merely testifying that he did not remember the events in question did not testify to any prejudicial or damaging fact. The trial court correctly denied appellee's motion to impeach and properly permitted appellee to cross-examine its witness as to prior inconsistent statements to refresh the witness's memory. See also *Hickory v. U. S.,* 151 U.S. 303, 14 S.Ct. 334, 38 L.Ed. 170 (1894); 49 Va.L.Rev. 996, 1016, 1017. The determination of whether the element of surprise is present is within the sound discretion of the trial judge. *Wheeler v. United States,* 93 U.S.App.D.C. 159, 211 F.2d 19 (1953), cert. denied, 347 U.S. 1019, 74 S.Ct. 876, 98 L.Ed. 1140 (1954). We do not find the trial judge abused his discretion in this case. The witness did not take the stand at his trial, and the prosecutor had no reason not to rely on the statements previously made by the witness to other individuals who had been interviewed by the prosecutor.

### Testimony Of Alleged Agent Of The Prosecution

Appellant contends that the testimony of witness Jack Van Noy should have been excluded at the trial for the reason that Van Noy was an agent of the state within the scope of *State v. Smith,* 107 Ariz. 100, 482 P.2d 863 (1971).

This Court stated in *State v. Smith, supra,* that the facts there disclosed that an agency relationship existed between the witness and the County Attorney's office thereby bringing into play the doctrine of *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). In *State v. Smith, supra,* the evidence of an agency relationship was first presented to the trial court after the trial, the verdict and the sentencing. The Court noted that the witness, a jail inmate, was a known informer and was placed next to the defendant in the County Jail for the purpose of obtaining information. The witness furnished information to the County Attorney about the defendant, and testified at the trial. Thereafter, because of his services, the witness ultimately was released from custody.

In this case the question of the possible agency relationship was raised by appellant at the trial. Extensive testimony was taken before the trial judge outside the presence of the jury as to the facts and circumstances surrounding the activities of the witness and the detectives and the relationship which existed between them. The trial judge concluded that no agency relationship existed. He allowed the witness, Van Noy, to testify before the jury as to a scheme proposed to him by appellant whereby Van Noy would supply false information and testimony to the police about defendant in exchange for $500.00 and an airplane ticket from the defendant on Van Noy's release from jail.

The testimony taken outside the presence of the jury was sufficient to sustain the ruling of the trial court permitting Van Noy to testify. Although Van Noy was already a police informer in connection with another case, the evidence showed that Van Noy, himself, initiated the contacts with the police in connection with the other case. During the conversation with the police, Van Noy asked if they wanted him to supply information about appellant. Van Noy was told by the police on two occasions they did not want him to obtain information from appellant because they could not send Van Noy in as an agent and it might "blow" their case against appellant. Van Noy was being held in the same cell block as appellant, four or five cells apart, having been moved to such location for his own protection from another cell block where the inmates had threatened Van Noy for his activities as a "snitch." Van Noy was allowed to pour coffee for inmates in the cell block. However, there is no evidence that the police directed Van Noy's activities. Van Noy persisted in having conversations with appellant which culminated in appellant's proposing the scheme concerning which Van Noy testified. Van Noy related the scheme to the police. They gave him a polygraph test, and thereafter took a full statement from him as to his conversations with appellant. There is evidence that the police and the prosecuting attorney subsequently advised Van Noy they would speak to the sentencing judge and recommend that he be transferred to a prison out of the state of Arizona for his protection. Such a recommendation was made and the Department of Corrections authorities assured the prosecutor that Van Noy would be sent out of state to serve any time remaining on his sentence.

As noted in our opinion in *State v. Smith, supra,* 107 Ariz. at 103, 482 P.2d at 866, and *State v. Jensen,* 111 Ariz. 408 at 412, 531 P.2d 531 at 535 (1975),

". . . law enforcement officials have the right, and indeed the obligation in the prosecution of crimes to use all information that comes into their hands pointing to the guilt of the accused.

This is true even though the persons supplying that information may harbor expressed or unexpressed motives of expectation of lenient treatment in exchange for such information. It is only where the state actively enters into the picture to obtain the desired information in contravention of constitutionally protected rights that the sanction of inadmissibility becomes pertinent."

We hold that there was sufficient evidence from which the trial court could properly conclude that Van Noy was not an agent of the state in connection with this case.

### Denial Of Change Of Venue

■ Appellant contends that a fair and impartial trial on the merits of the case was impossible because of the likelihood that the jurors had been subjected to prejudicial publicity in the newspapers. Appellant's pretrial motion for change of venue was denied by the trial court.

Rule 10.3(b), Rules of Criminal Procedure, provides that the moving party bears the burden of proof in such a motion. This Court has held that the trial court's ruling on a motion for change of venue will not be disturbed on appeal unless a clear abuse of discretion appears and is shown to be prejudicial to the defendant. *State v. Narten,* 99 Ariz. 116, 407 P.2d 81 (1965), cert. denied, 384 U.S. 1008, 86 S. Ct. 1985, 16 L.Ed.2d 1021 (1966); *State v. Schmid,* 107 Ariz. 191, 484 P.2d 187 (1971); *State v. Endreson,* 109 Ariz. 117, 506 P.2d 248 (1973).

Appellant cites *Rideau v. Louisiana,* 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963); and *Estes v. Texas,* 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965) in support of his position. We do not find that the prejudicial factors in the cases cited by appellant are present in the instant case.

In the *Rideau* case, *supra,* there was a television interview with the defendant in jail. During the course of the interview he admitted committing the offenses. The interview was broadcast three times in the community. Several of the jurors admitted having seen it. In the *Estes* case, *supra,* the actual trial was broadcast on television. In this case, various newspaper articles concerning the defendant were printed in Tucson over a period of a year prior to the trial. The trial court found the defendant did not establish that he could probably be deprived of a fair trial.

We find no abuse of the discretion of the trial court with respect to the denial of motion for change of venue.

### Denial of Motion To Exclude Photographs of Victim's Body

The trial court admitted into evidence over objection fifteen photographs of the victim which showed him nude, bruised, with gunshot wounds and with one of his hands tied with a belt. Some of the photographs showed the victim's body at the morgue.

Appellant conceded at the hearing concerning admission of the photographs that the victim died of a gunshot wound to the head, that the victim was beaten prior to his death and was found nude with a belt tied or wrapped around one of his hands. Appellant was not willing to concede that the killing occurred with malice aforethought. Appellant argues that in view of the concessions of defense counsel at trial, the photographs had no probative value, citing *Reeder v. State,* 515 P.2d 969 (Wyo.1973); *Archina v. People,* 135 Colo. 8, 307 P.2d 1083 (1957); and *Dyken v. State,* 89 So.2d 866 (Fla.1956).

Appellee argues that the photographs were probative as to the issue of malice as well as to corroborate certain testimony, to impeach the testimony of Anne Chapman, a witness of the court, to establish the circumstances of the victim's death and to illustrate or explain the testimony.

■ The trial court has discretion to admit or exclude gruesome photographs, and competent evidence will not be exclud-

ed simply because it may arouse emotions. *Young v. State,* 38 Ariz. 298, 299 P. 682 (1931); *State v. Chambers,* 102 Ariz. 234, 428 P.2d 91 (1967); *State v. Thomas,* 110 Ariz. 120, 515 P.2d 865 (1973).

We hold that the trial court did not abuse its discretion in admitting the photographs of the victim's body which were probative as to the question of malice or the felony murder doctrine and to corroborate or explain the testimony.

### Testimony And Instruction On Flight Of Defendant

Prior to trial, appellant filed a motion in limine to prevent testimony and court instruction concerning flight of appellant. Appellant also objected at the end of the trial to the following instruction:

"Flight or concealment of the accused after a crime has been committed, does not create a presumption of guilt. It is, however, a circumstance which may tend to prove consciousness of guilt, and should be considered and weighed by you in connection with all the other evidence."

Citing *State v. Bailey,* 107 Ariz. 451, 489 P.2d 261 (1971), appellant states that the record is devoid of sufficient evidence of flight from the scene or concealment by appellant to justify giving of the instruction set forth above.

In *State v. Bailey, supra,* 107 Ariz. at p. 452, 489 P.2d at 262, we held that:

"In determining whether an instruction on flight is warranted by the evidence, this court has followed the test laid down in *State v. Owen,* 94 Ariz. 404, 385 P.2d 700 (1963), rev'd on other grounds, 378 U.S. 574, 84 S.Ct. 1932, 12 L.Ed.2d 1041. There we stated that ordinarily, unless the flight be upon immediate pursuit, it is necessary to establish some concealment or attempted concealment on the part of the accused in order to constitute flight."

The record discloses that the offenses occurred on July 1, 1973, or July 2, 1973,

in Tucson, Arizona. Appellant remained in Tucson thereafter and was interviewed by police officer Bunting several times. By August 15, 1973, officer Bunting advised appellant to see his attorney because the "case was going to blow."

Witness Terry Beaver testified that appellant left for California in August. Appellant telephoned Beaver long distance and asked "if things were as hot as when he left." Appellant called Beaver again thereafter long distance and was told there was a warrant for appellant's arrest for murder. In a third telephone conversation, Beaver warned appellant the telephone might be tapped.

Appellant returned to Tucson in late January, 1974, and registered at a motel under an assumed name and listing a false occupation.

There is sufficient evidence considering the record as a whole to establish concealment by appellant from and after the time he learned that he was a suspect in the state's case. Such evidence warrants the giving of the trial court's instruction on flight or concealment.

### Calling Of Witnesses By The Court

Appellant asserts that it was error for the court to call Anne Chapman and Nancy Campbell as the court's witnesses at the trial unless material injustice would have resulted otherwise and unless they were eye witnesses. Appellant cites *People v. Cardinelli,* 297 Ill. 116, 130 N.E. 355 (1921); *People v. Johnson,* 333 Ill. 469, 165 N.E. 235 (1929); and *People v. Boulahanis,* 394 Ill. 255, 68 N.E.2d 467 (1946).

This court has held that the trial court has the power to call its own witnesses in the interest of justice. *State v. Guthrie,* 108 Ariz. 280, 496 P.2d 580, cert. denied, 409 U.S. 878, 93 S.Ct. 131, 34 L.Ed.2d 132 (1972). In *State v. Guthrie, supra,* we held it was not reversible error for the court to refuse to call a witness as the court's witness on motion of the defendant.

In *United States v. Wilson,* 447 F.2d 1 (9th Cir. 1971), the court held it was not

**334**

an abuse of discretion for the trial court to call as its own witness one who had been implicated in the crime. The court held it was within the discretion of the trial court, and a showing of prejudice resulting from an abuse of the discretion must be established in order to reverse the conviction.

As noted in McCormick, Evidence, 2d Ed. § 8, P. 13, the court's discretionary power to call witnesses is most often exercised when the prosecution expects that a necessary witness will be hostile and desires to be able to freely impeach the witness.

■■■■ This Court has never adopted the rule noted in the Illinois cases cited by appellant requiring a showing that a material injustice would result unless the court called the witness. The calling of witnesses by the court, whether eye-witnesses or otherwise, is within the sound discretion of the trial court and will not be grounds for reversal unless it is established that the trial court abused its discretion and prejudice to the defendant resulted therefrom. In this case the prosecutor avowed to the court that he could not vouch for the truth and veracity of the two witnesses. Both witnesses had been granted immunity from prosecution because they were originally suspects in the state's case. They were hostile to the prosecution and had made inconsistent statements at different times prior to the trial. It was not error for the trial court to call the witnesses as its own. The court has a duty to aid in seeking the truth and to see that justice is not perverted. *United States v. Wilson, supra,* 447 F.2d at p. 9.

### Testimony of Witness Who Had Previously Lied

As his final assignment of error, appellant asserts that it was reversible error for the court to deny appellant's motion in limine to suppress testimony by the witness Cryle "Terry" Beaver. In connection with appellant's motion in limine, a hearing was held outside the presence of the jury. At this hearing Beaver admitted he has previously lied to appellant's former attorney

as well as to the police when he stated appellant had never admitted the murder to Beaver. After appellant's arrest, Beaver told the police a different story and stated appellant had admitted his part in the murder of David Chapman. At the hearing on the motion in limine, Beaver explained that he did not tell the truth originally to the police or to appellant's attorney because appellant was not in custody, because Beaver was afraid for his own life, because he did not trust appellant's lawyer and because appellant had told him a "pay off" had been made to the police.

■■■ Knowing use of perjured or false testimony by the prosecution is a denial of due process and is reversible error without the necessity of a showing of prejudice to the defendant. *Mooney v. Holohan,* 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935).

■■■ In this case, however, the witness Beaver had made inconsistent statements to the police before trial. The witness explained his reasons for not telling the truth initially, and asserted that the statements he had subsequently made were the truth. There is absolutely no showing by appellant that the prosecution knowingly used perjured or false testimony at the trial or that Beaver's testimony at the trial was false. The prosecution is under an obligation to present the witness as he was. It was brought out at the trial and before the jury that he had made previously inconsistent statements. The credibility of the witness was for the jury to determine. The trial court did not err in refusing to grant appellant's motion in limine concerning the testimony of Terry Beaver.

The judgment of the trial court is affirmed.

CAMERON, C. J., STRUCKMEYER, V. C. J., HAYS, J., and WILLIAM W. NABOURS, Judge of the Superior Court, Yuma County, concur.

HOLOHAN and LOCKWOOD, JJ., did not participate in the determination of this matter and O'CONNOR and NABOURS, Judges were called to sit in their stead.