NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

JERRY LOUIS MATTA, *Appellant*.

No. 1 CA-CR 15-0184
FILED 8-16-2016

Appeal from the Superior Court in Maricopa County
No. CR2012-162103-001
The Honorable Robert E. Miles, Judge (Retired)

**AFFIRMED AS MODIFIED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Michael J. Dew Attorney at Law, Phoenix
By Michael J. Dew
*Counsel for Appellant*

------

**MEMORANDUM DECISION**

Judge Samuel A. Thumma delivered the decision of the Court, in which Presiding Judge Andrew W. Gould and Judge Patricia K. Norris joined.

------

**T H U M M A**, Judge:

**¶1**        This is an appeal under *Anders v. California*, 386 U.S. 738 (1967) and *State v. Leon*, 104 Ariz. 297 (1969). Counsel for defendant Jerry Louis Matta has advised the court that, after searching the entire record, counsel has found no arguable question of law and asks this court to conduct an *Anders* review of the record. Matta was given the opportunity to file a supplemental brief pro se, and has done so.[1] This court has reviewed the record and has found no reversible error. Accordingly, Matta's convictions and resulting sentences are affirmed.

**FACTS[2] AND PROCEDURAL HISTORY**

**¶2**        After a day of shopping, A.O. parked in front of her mother's house in Phoenix so that her friend, B.D., could retrieve her car. As B.D. prepared to drive away, Matta knocked loudly on A.O.'s window and then quickly pulled the door open. A.O. saw Matta standing outside her driver's door and a woman standing outside her passenger door. Matta told A.O. to give him her cell phone and to get out of the car and leave it running. Matta allowed A.O. and her two children to get out of the car and then Matta and the woman got in A.O.'s car and drove away. A.O. immediately called the police.

**¶3**        Matta and his female companion drove A.O.'s car to a shopping mall where several store employees were leaving for the night.

------

[1] Although Matta missed the deadline this court set to file his supplemental brief, he filed a request to have several issues addressed on the record, which this court granted and treats the request as a supplemental brief.

[2] This court views the facts "in the light most favorable to sustaining the verdict, and resolve[s] all reasonable inferences against the defendant." *State v. Rienhardt*, 190 Ariz. 579, 588-89 (1997). Initials are used to protect the privacy of victims. *State v. Maldonado*, 206 Ariz. 339, 341 n.1 ¶ 2 (App. 2003).

C.G. had just left the store and was talking to J.F., as they both waited for E.M. Matta's companion drove up to C.G., E.M. and J.F with Matta in the passenger seat. Matta asked if they knew if there was a nightclub nearby. After they responded that they did not, Matta pointed a gun at them and demanded their wallets, cell phones, watches and everything else they had, threatening to shoot them. Matta got out of the car, collected C.G.'s, E.M.'s and J.F.'s things, then got back in the car and he and his companion sped off. E.F. immediately called the police.

¶4　　　　Not long after, a Phoenix Police Department patrol unit spotted the stolen car, began to follow it and radioed in its location. A Police helicopter responded and began following the car. The helicopter and patrol units followed the car to a motel where Matta and his female companion stopped and abandoned the car. Both ran, but in different directions. An officer directed Matta to stop and put down his gun; in response, Matta pointed his gun at the officer. Matta then ran past a trash can, appearing to trip as he did. Matta got up and continued to run, but he and his female companion were quickly arrested.

¶5　　　　A few hours later, police took C.G. and E.M. to the motel where they were holding Matta. C.G. and E.M. identified Matta as the person who robbed him. A.O. and B.D. later identified Matta in a photographic lineup. Several of the victims' personal items, including C.G.'s wallet, were taken from Matta when he was arrested.

¶6　　　　During a search of the motel parking lot, police found a handgun in the trash can Matta ran past. DNA found on the gun matched a sample taken from Matta. Matta's fingerprints were found on the gun. Police also found text messages on Matta's cell phone attempting to sell the stolen car to a third party.

¶7　　　　The State charged Matta with aggravated robbery, a Class 3 felony; theft of means of transportation, a Class 3 felony; three counts of armed robbery, Class 2 dangerous felonies; misconduct involving weapons, a Class 4 dangerous felony and aggravated assault, a Class 2 dangerous felony. At Matta's request, and after an appropriate colloquy, Matta represented himself throughout the proceedings. Before trial, Matta moved for sanctions against the State, arguing the car and personal items should not have been returned to the victims without first testing them for DNA and fingerprints and allowing him to do the same. Matta also claimed the State had not complied with disclosure obligations. After a hearing, the court denied the motion, finding the State had complied with disclosure obligations and that Matta had not shown the police failed to preserve any

exculpatory evidence, but that a jury instruction pursuant to *State v. Willits*, 96 Ariz. 184 (1964) might be appropriate.

¶8        During the 13-day trial, the State called various witnesses who testified to the facts described above. The State also introduced evidence that Matta had previously been convicted of a dangerous felony. At the close of the State's case, Matta unsuccessfully moved for a judgment of acquittal, arguing the State had not provided substantial evidence to prove the charges.

¶9        The jury found Matta guilty as charged. Matta then withdrew his waiver of his right to counsel and, through counsel, moved for a new trial. Matta asserted prosecutorial misconduct by improperly commenting on Matta's failure to volunteer facts to the police and the length of his prison sentence if convicted. The court denied the motion for new trial and sentenced Matta to concurrent, aggravated terms of seven and one half years in prison for count 1 and seven years for count 2, with 819[3] days of presentence incarceration credit. The court also sentenced Matta to aggravated terms of 17 years in prison for each of counts 4, 5 and 6; four and one half years for count 7 and 18 flat years for count 9. Counts 4, 5 and 6 were imposed concurrently with each other but consecutive to counts 1, 2, 7 and 9 and counts 7 and 9 were imposed concurrently with each other but consecutive to counts 1, 2, 4, 5 and 6.

¶10        Matta timely appealed from his convictions and resulting sentences. This court has jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) sections 12-120.21(A)(1), 13-4031, and -4033 (2016).[4]

## DISCUSSION

¶11        This court has reviewed and considered counsel's brief and Matta's pro se supplemental brief and has searched the entire record for reversible error. *See State v. Clark*, 196 Ariz. 530, 537 ¶ 30 (App. 1999). Searching the record and briefs reveals no reversible error. The record shows that, when not represented by counsel, Matta had knowingly,

---

[3] Matta was arrested on December 6, 2012 and sentenced on March 6, 2015. Accordingly, the correct amount of presentence incarceration credit is 820 days.

[4] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

voluntarily and intelligently waived his right to counsel. The evidence admitted at trial constitutes substantial evidence supporting Matta's convictions. From the record, all proceedings were conducted in compliance with the Arizona Rules of Criminal Procedure. The sentences imposed were within statutory limits and permissible ranges. Matta raises several arguments in his pro se supplemental brief, which this court addresses in turn.

I.      **Matta Has Not Shown The State Failed To Preserve Or Disclose Evidence.** [5]

    A.      *Willits* **Instruction.**

¶12      Matta argues the superior court abused its discretion by denying his request to give a jury instruction pursuant to *State v. Willits*, 96 Ariz. 184 (1964), because the stolen car and the victims' personal items were not tested for DNA and fingerprints and no other efforts were taken to preserve such evidence. "To be entitled to a *Willits* instruction, a defendant must prove that (1) the state failed to preserve material and reasonably accessible evidence that could have had a tendency to exonerate the accused, and (2) there was resulting prejudice." *State v. Torres*, 162 Ariz. 70, 76 (App. 1989) (citation omitted). A court does not abuse its discretion in refusing to give a *Willits* instruction based on a failure by the police to preserve possible fingerprint evidence when it is not shown such evidence would not establish innocence. *State v. Strong*, 185 Ariz. 248, 251 (App. 1995).

¶13      Matta has not shown fingerprinting and DNA testing of the items would have been exculpatory. Multiple witnesses testified to seeing Matta in possession of the stolen car and personal items. Moreover, the State's expert testified that finding Matta's fingerprints or DNA on an item is evidence that Matta touched the item, but that because people often touch things without leaving detectable fingerprints or DNA, a failure to recover Matta's DNA or fingerprints on the items is not evidence that he did not possess them. Because Matta has not shown that the presence or absence of

---

[5] Matta's supplemental brief raised eight issues. Issue six states, "Abuse of discretion in regards to trial court refusing to sanction Prosecution for failure to disclose and failure to preserve." Because issue six presents substantially the same legal questions as issues one and two, this court addresses issues one ("denial of a *Willits* instruction"), two ("failing to suppress prejudicial evidence") and issue six together.

his fingerprints or DNA on the stolen items would establish his innocence, the superior court did not err in refusing to give a *Willits* instruction.

### B. Prejudicial Evidence.

**¶14** Matta argues the superior court abused its discretion by admitting prejudicial evidence at trial. Matta made no objections at trial that any admitted evidence was unfairly prejudicial under Arizona Rule of Evidence 403. Matta did, however, object to several items of evidence alleging they were not timely disclosed. The State is required to disclose witnesses, documents and other evidence to the defendant no later than 30 days after arraignment. Ariz. R. Crim. P. 15.1(a)-(c). The superior court may exclude evidence as a sanction for failing to comply with this obligation. Ariz. R. Crim. P. 15.7(a)(1). "The choices of whether to impose a sanction and which sanction to impose are left to the discretion of the trial court and will not be disturbed on appeal absent a showing of abuse." *State v. Tucker*, 157 Ariz. 433, 439 (1988). "Generally, there is no abuse of discretion if the defendant suffers no prejudice." *Id.*

**¶15** Matta claimded to not have had the opportunity to take the deposition of some witnesses, that the State never disclosed a number of photographs and notes, and that the State did not disclose that it may read the contents of a phone. The State disputed these claims. The superior court found that scheduling depositions was Matta's responsibility and that even if the State had impeded his ability to depose witnesses, he had waived the objection by not raising it before trial. The court held a hearing before trial in which it found the State had complied with all disclosure requirements. The court also found that, because Matta did not timely object to the cell phone being admitted in evidence, he had waived any objection regarding the contents of the phone.

**¶16** Of Matta's three disclosure objections, two were deemed waived because they were untimely. The third was rejected because the court found that the State had not violated any disclosure rules. This court has searched the record and has failed to find any disclosure violations. Accordingly, Matta has not shown the superior court abused its discretion by refusing to sanction the State for claimed disclosure violations.

### II. Matta Has Not Shown Perjured Testimony Was Admitted At Trial.

**¶17** Matta asserts "fundamental error by allowing perjured testimony." "A person commits perjury by making . . . [a] false sworn statement in regard to a material issue, believing it to be false." A.R.S. § 13-2702(A). "Knowing use of perjured or false testimony by the prosecution is

a denial of due process and is reversible error without the necessity of a showing of prejudice to the defendant." *State v. Ferrari*, 112 Ariz. 324, 334 (1975).

¶18 Several times during trial Matta accused witnesses of perjury for making inconsistent statements. Multiple times, while cross-examining witnesses, Matta asked if the witness knew the meaning of perjury and then highlighted an inconsistency in testimony. While cross examining Officer Ordanza, Matta asked:

> Q. Do you understand the legal definition of perjury?
>
> A. No.
>
> Q. Do you have a concept of what perjury is?
>
> A. A little bit, yes.
>
> Q. Can you explain to the best of your understanding of what perjury is?
>
> A. Making a false statement.

Matta then asked:

> Q. So at that point you said that you now remember that you had prior testified at these evidentiary hearings, correct?
>
> A. Correct.
>
> Q. On Tuesday when I asked you right before we ran out of time I asked you and you said I don't remember, correct?
>
> A. Correct.
>
> Q. Now in that instance how come you didn't tell the truth to the best of your ability?
>
> A. I honestly did not think I testified earlier.

¶19 As another example, while cross-examining Officer Ramirez, Matta asked:

Q. Which story is correct? Which one is it, is it the one you're saying that the gun is pointing at this building or is it the prior evidentiary hearing where you're saying the gun is pointed at that building? Which one is it?

A. What my report says and what I testified today.

Q. What your report says and what you testified to today?

A. Yes, sir.

Q. So this was a mistake?

A. It was a mistake. If I recall the evidentiary hearing we were going back and forth for over an hour. Can I say I got confused on the building, yes, that's true.

After the State rested, Matta moved for a judgment of acquittal based on alleged perjury, including that discrepancies between the accounts of the various witnesses amounted to perjury. He also made similar arguments in his opening statement and closing argument.

¶20 None of these situations constitute perjury, defined as a "false sworn statement in regard to a material issue," made by a person "believing it to be false." A.R.S. § 13-2702(A). The witnesses testified that despite minor inconsistencies, they were testifying truthfully and to the best of their abilities. Inconsistencies in testimony are not perjury but may be considered in assessing credibility. *See Ferrari*, 112 Ariz. at 334. Mere inconsistences in testimony from different witnesses do not constitute perjury. Accordingly, Matta has not shown the superior court erred by allowing perjured testimony.

## III. Matta Has Not Shown The Superior Court Improperly Excluded Impeachment Evidence.

¶21 Matta argues the superior court abused its discretion by failing to admit impeachment evidence. "Any party . . . may attack the witness's credibility." Ariz. R. Evid. 607. "[E]xtrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may,

on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of . . . the witness." Ariz. R. Evid. 608(b)(1). This court reviews rulings on such issues for an abuse of discretion and will not reverse unless unfair prejudice resulted or the court incorrectly applied the law. *Larsen v. Decker*, 196 Ariz. 239, 241 ¶ 6 (App. 2000).

**¶22**      The State moved to exclude a testifying officer's internal investigation records showing that the officer had been disciplined for taking a prohibited substance. Matta argued that he should be allowed to cross-examine the witness with the records because they were probative of his untruthfulness. The superior court excluded the evidence, finding the records were not probative of untruthfulness because taking a prohibited substance does not show untruthfulness and the records did not include any finding that the officer had lied during his discipline proceedings. Because the record shows the court properly applied the law and concluded the evidence Matta sought to introduce was not probative of untruthfulness, Matta has not shown the court abused its discretion.

## IV.   Matta Has Not Shown Prosecutorial Misconduct.

**¶23**      Matta argues the superior court erred by allowing the prosecutor "to attack [Matta's] right to self-representation." During closing arguments, the prosecutor told the jury, "the defendant chose to represent himself. He chose to present his case. He has every right to do that. Don't feel sorry for him." Matta made no objection to these statements, meaning this court reviews for fundamental error. *See State v. James*, 231 Ariz. 490, 493 ¶ 11 (App. 2013). "Accordingly, [Matta] 'bears the burden to establish that "(1) error exists, (2) the error is fundamental, and (3) the error caused him prejudice."'" *Id.* (citations omitted). Matta has not shown error, let alone fundamental error resulting in prejudice. The prosecutor's only comment was that the jury should not "feel sorry" for Matta, which is compatible with the court's instruction to the jury that it "must not be influenced by sympathy or prejudice." The prosecutor did not suggest any inferences based on Matta's election to represent himself and did not ask the jury to make any. Matta has not shown fundamental error resulting in prejudice on this point.

## V.   The Superior Court Properly Denied Matta's Motion For Judgment Of Acquittal.

**¶24**      Matta argues the superior court erred by denying his motion for judgment of acquittal. "[T]he court shall enter a judgment of acquittal .

. . if there is no substantial evidence to warrant a conviction." Ariz. R. Crim. P. 20(a). This court reviews a "denial of a Rule 20 motion for an abuse of discretion and will reverse a conviction only if there is a complete absence of substantial evidence to support the charges." *State v. Tillmon*, 222 Ariz. 452, 456 ¶ 18 (App. 2009) (citation omitted). For the robbery, theft and assault charges, witnesses testified to having seen Matta commit each offense. For the misconduct involving weapons charge, DNA that matched Matta's was on a gun that was found in a trash can next to where witnesses saw Matta trip. Reasonable jurors could have believed the accounts of the numerous witnesses and accepted the DNA evidence. Because substantial evidence existed to support each conviction, the superior court did not abuse its discretion by denying Matta's Rule 20 motion for judgment of acquittal.

## VI. The Superior Court Did Not Err By Denying Matta's Motion For New Trial.

¶25        Matta argues the superior court abused its discretion by denying his motion for a new trial. "The court may grant a new trial . . . [if] the prosecutor has been guilty of misconduct." Ariz. R. Crim. P. 24.1(c)(2). "Absent patent error, we defer to the trial court's determination whether prosecutorial misconduct is so prejudicial as to require a new trial." *State v. Smith*, 182 Ariz. 113, 116 (App. 1995). This court will affirm the superior court's decision "unless there is invective so palpably improper that it is clearly injurious." *State v. Scott*, 24 Ariz. App. 203, 206 (1975) (citation omitted).

¶26        In his motion for new trial, Matta argued prosecutorial misconduct in commenting on the possible length of Matta's sentence if convicted. Matta also argues an investigator's comments on his failure to disclose his version of events violated his right to remain silent.

### A. Comments On Length Of Matta's Possible Sentence.

¶27        During cross-examination of Matta, the following exchange occurred:

> Q. You're looking at substantial time in the Department of Corrections, correct?
>
> A. According to my calculations --

Q. Mr. Matta, it's just a yes or no. Are you looking at a substantial time in the Department of Corrections with regard to these crimes?

A. I would say so, yes, any time is substantial for somebody who is innocent. I'm not fighting hard for no reason.

¶28 This cross-examination was without objection and came after Matta testified during direct examination that he previously "got convicted to ten years in prison." During direct examination, Matta also testified that the reason he hid the gun was that he "didn't want to get in trouble for a gun. I just wanted to go back to prison and do my time, not an extra three, four, five, six years for a gun that I wasn't supposed to have." Thus, during his direct examination, Matta testified that he faced a lengthy prison sentence and admitted that knowledge of that possibility had affected his actions. Moreover, the closing jury instructions given directed that the jury was not to consider the penalty when determining guilt or innocence. Because Matta has shown no prejudice, it was not an abuse of discretion for the superior court to deny his motion for new trial on this ground.

**B.    Comments On Matta's Failure To Disclose His Version Of Events.**

¶29 During Matta's cross-examination, the prosecutor's questions led to this exchange:

Q. A majority of this stuff you never told Detective Gonzalez back in 2012; isn't that correct?

A. As far as my crime, as far as what I've been charged for?

Q. No, having the gun pointed at you and that's the reason why you ran that night.

A. I didn't mention it.

Q. Don't you think that's important?

A. Yes, later on for the proceedings it's probably an ace up my sleeve to prove my innocence.

11

Matta argues that these, and other nearly identical questions, violated his Fifth Amendment right to remain silent. Matta did not argue in the motion for new trial, however, that he had invoked his right to remain silent. Where a defendant has not invoked his right to remain silent, it is not a violation of the right for the prosecutor to comment on his silence. *See Salinas v. Texas*, 133 S. Ct. 2174, 2180 (2013). Because the prosecutor did not violate Matta's rights, it was not an abuse of discretion for the superior court to deny his motion for new trial.

**CONCLUSION**

**¶30** This court has read and considered counsel's brief and Matta's pro se supplemental brief and has searched the record provided for reversible error and has found none. *Leon*, 104 Ariz. at 300; *Clark*, 196 Ariz. at 537 ¶ 30. Accordingly, Matta's convictions and resulting sentences are affirmed as modified to reflect 820 days of presentence incarceration credit.

**¶31** Upon filing of this decision, defense counsel is directed to inform Matta of the status of his appeal and of his future options. Defense counsel has no further obligations unless, upon review, counsel identifies an issue appropriate for submission to the Arizona Supreme Court by petition for review. *See State v. Shattuck*, 140 Ariz. 582, 584–85 (1984). Matta shall have 30 days from the date of this decision to proceed, if he desires, with a pro se motion for reconsideration or petition for review.



Amy M. Wood • Clerk of the court
FILED: AA